### ASPY ET AL. *v.* LEWIS ET AL.

[No. 18,587. Filed Jan. 31, 1899. Rehearing denied April 25, 1899.]

WILLS.—*Construction.*—*Disinheritance.*—A construction of a will which would disinherit a child or direct descendant in favor of collateral kindred, is not to be accepted unless the language of the will is such as clearly to indicate such intention. *p. 495.*

SAME.—*Construction.*—*Vesting of Estate.*—The law looks with disfavor upon the postponement of estates, and the intent to postpone must be clear and manifest, and must not arise by mere inference or construction. *p. 496.*

SAME.—*Construction.*—*Words of Survivorship.*—The words of survivorship in a will must be held to relate to the death of the tes-

152 493
159 116
152 493
160 123
152 493
165 203

tator, rather than to the death of the first taker, if the words of the will are capable of such construction. *p. 496.*

WILLS.—*Construction.*—*Survivorship.*—*Vested Remainder.*—Testator devised his real estate to his wife so long as she remained his widow, and provided that " the above estate that is bequeathed to my wife shall be in full possession of my only daughter, Maria Louisa, at the death or marriage of my wife, provided she shall be living, and if she is not living, at the death or marriage of my wife then the estate to go to the use of my brothers and sisters." *Held,* that the will gave a vested remainder to the daughter at her father's death, which, at the daughter's death before her mother, descended to her children. *pp. 494-500.*

From the Bartholomew Circuit Court.    *Reversed.*

*W. W. Lambert, Ralph H. Spaugh, M. D. Emig, W. W. Herrod* and *W. P. Herrod,* for appellants.

*G. W. Cooper* and *C. B. Cooper,* for appellees.

HADLEY, J.—The complaint shows that the will of Jonas Reed was duly admitted to probate in Bartholomew county on the 10th day of July, 1843; the part thereof material to a decision of this case being in the words following: "And I also direct that the real estate of which I die seized or possessed of be disposed of in the following manner, to wit:    I bequeath to my beloved wife, Elizabeth, all my real estate so long as she remains a widow, namely:    The east half of the southwest quarter of section eighteen, in town ten north, of range seven east, containing eighty acres, more or less, being in the Indianapolis district; together with all the rights, privileges, and appurtenances thereto belonging.    And I direct further that the above estate that is bequeathed to my wife shall be in the full possession of my only daughter, Maria Louisa, at the death or marriage of my wife, provided she shall be living; and if she is not living, at the death or marriage of my wife then the estate to go to the use of my brothers and sisters or their heirs."

The testator left surviving him his wife, Elizabeth Reed, and his daughter, Maria Louisa Reed, and several brothers and sisters.    His wife and widow, Elizabeth, never remar-

ried, and died in 1897. His daughter, Maria Louisa, inter-married with John Aspy, had children, and died before her mother, Elizabeth Reed.

This suit is for partition and to quiet title. Appellants' separate demurrers were overruled to the complaint, which presents the only question for decision. The appellants (defendants below) are the widower and children of Maria Louisa, deceased, and claim title through her by virtue of the will of Jonas Reed, on the theory that Maria Louisa took a fee simple; and appellees, who are the brothers and sisters, and their descendants, of Jonas Reed, claim title through the will by virtue of the fact that Maria Louisa, the daughter, died before her mother, and on the theory that Maria Louisa took only a contingent remainder under the will. The real question, therefore, raised by the assignments of error is, in whom is the title, the heirs, of Maria Louisa, the daughter, appellants herein, or in the brothers and sisters and their heirs, appellees herein?

It has been said that the intent of the testator must be the polar star in the construction of a will. Among the rules of construction is that which springs from our human nature, when engaged in the serious and solemn business of making a final disposition of property, and when natural affection for wife and children has the most impartial and sincerest sway. In such moments it is presumed that the testator will have a just and tender regard for those dependent ones, who are the natural recipients of his bounty, and whose future comfort and happiness have the promptings of his affection. Hence it is that no construction of a will is to be accepted that disinherits a child or direct descendant in favor of collateral kindred, unless the language of the will is such as clearly to indicate such intention. In a recent well considered case the court said: "An heir cannot be disinherited unless the intention to disinherit be expressed, or is to be clearly and necessarily implied. When one construction of an ambiguous will leads to a disinheritance of the heir, and another

favorable to the heir, the latter construction must be adopted." *Crew* v. *Dixon*, 129 Ind. 85.

Another rule of construction is that the law looks with disfavor upon the postponement of estates, and the intent to postpone must be clear and manifest, and must not arise by mere inference or construction. "And the law will not construe a limitation in a will into an executory devise when it can take effect as a remainder, nor a remainder to be contingent when it can be taken to be vested." *Doe* v. *Considine,* 6 Wall. 458-475; *Bruce* v. *Bissell,* 119 Ind. 525-530; *Heilman* v. *Heilman,* 129 Ind. 59-64. "It is a rule of law that estates shall be held to vest at the earliest possible period, unless there be a clear manifestation of the intention of the testator to the contrary." *Doe* v. *Considine, supra; Heilman* v. *Heilman, supra; Amos* v. *Amos,* 117 Ind. 19-37; *Harris* v. *Carpenter,* 109 Ind. 540.

Another principle of construction correlative to the one just stated, is that words of survivorship must be held to relate to the death of the testator, rather than to the death of the first taker, if the words of the will are capable of such construction. This doctrine is in aid of a vested, as against a contingent, remainder.

In the case of *Harris* v. *Carpenter,* 109 Ind. 540, the will, so far as it relates to the question here presented, is as follows: "Item 2. I further give and devise to her, (widow), in lieu of her interest in my lands, the following part and parcel of the farm * * * on which we now reside, bounded and described as follows, to wit: * * * She my said wife, to have the same after my death for and during the period of her natural life; and at her death the same shall be the property of and pass to my daughter, Laura Carpenter, * * * in fee; but if she, said Laura, be not living, then to her heirs forever." Concerning which the court said, "Construing the will before us in the light of the foregoing authorities, we have reached the conclusion that the survivorship provided for in the last clause of the second

item had reference to the time of the death of the testator, and that upon his death Mrs. Carpenter became seized of a vested remainder in fee in the land devised by that item of the will."

In *Hoover* v. *Hoover*, 116 Ind. 498, the will under consideration provided that certain lands should go to the widow of testator "for and during her natural life, and, at her death, said real estate to pass in fee simple, in equal portions, to my son, Andrew, and my daughter, Hattie. The east half of said farm to go to my son, Andrew, if he be living, and if he be dead, then to his widow." Mitchell, J., speaking for the court, said: "Accepting the position as established, that words of survivorship in a will, unless there is a manifest intent to the contrary, always relate to the death of the testator, and that, in the absence of a contrary intent, a will always speaks as from the date of the testator's death, there can be no doubt but that Andrew took an estate in fee simple in remainder, which vested immediately upon the death of his father."

The same principle is reaffirmed and followed in the following cases: *Heilman* v. *Heilman*, 129 Ind. 59; *Wright* v. *Charley*, 129 Ind. 257; *Borgner* v. *Brown*, 133 Ind. 391.

In *Fowler* v. *Duhme*, 143 Ind. 248, the testator, Moses Fowler, devised the residuum of his real estate to his three children upon condition, namely:

"(*a*)   In the event of the death of any of my said children without lawful issue *living at the time of the death of such child*, then the share of such deceased child shall vest in, * * * * such of my said children as shall then be living." This court, in a very elaborate opinion, and upon review of many authorities of this and other states, concluded that the death intended, related to one occurring in the lifetime of the testator, and not to one occurring after his death.

In this, and many other cases of its class, it is conceded that the application of the rule contended for is often repugnant

to the simple import of the words used; but, keeping the intent of the testator as the central thought, the common import of words must yield to well established rules of construction, if thereby the general intent of the testator, as gathered from the whole will, may be consistently maintained. Courts do not close their eyes to the fact that in the preparation of wills words are often carelessly used, and without an adequate sense of their legal effect, and without a mental grasp of all the conditions that may arise affecting the bequest, and when an inaccuracy is apparent, or even doubtful, courts, to prevent miscarriage of testamentary intent, generously interpose such rules of construction as time and experience have approved. Some of these salutary and pertinent rules are aptly and succinctly stated in *Moores* v. *Hare*, 144 Ind. 573, as follows: "It is settled law that words of survivorship in a will, unless there is a manifest intent to the contrary, always relate to the death of the testator, and that in the absence of contrary intent a will always speaks as from the testator's death." * * * "The law not only favors the vesting of remainders, but it also presumes that words postponing the estate relate to the beginning of the enjoyment of the remainder and not to the vesting of such an estate. In the absence of a clear manifestation of the intention of the testator to the contrary, an estate will be held to vest at the earliest possible period. The intent to postpone must be clear and manifest, and must not arise by mere inference or construction."

The will of Stoughton Fletcher gave to his daughter, Mrs. Ritzinger, certain real estate for life, with provision that at her death said real estate "shall go to her children in fee. If any child of hers shall have died, leaving a child or children, then the portion of said real estate that would have gone to the parent shall go to such child or children." And applying the rules above stated, the court adds: "There being no manifest intent to the contrary, it will be presumed that the clause providing that at the death of Mrs. Ritzinger the real

estate devised shall go to her children in fee simple relates
to the beginning of the enjoyment of the remainder, and not
to the vesting of that estate, and that the clause 'if any child
of hers shall have died leaving a child or children' has refer-
ence to a death during the lifetime of the testator." The
principles announced in this case have the uniform approval
of many decisions of this State, and cannot now be open to
controversy. Applying them to the will under considera-
tion, we are irresistibly led to the conclusion that the survi-
vorship of Maria Louisa related to the death of the testator,
and not to the death of the life tenant. Can it be said that
Jonas Reed intended by his last will to disinherit his grand-
children—the children of his only daughter—in favor of his
brothers and sisters and their children? The testator de-
vised all his real estate to his wife for life, "and I direct
further that the above estate that is bequeathed to my wife
shall be in the *full* possession of my only daughter, Maria
Louisa, at the death or marriage of my wife." From the
use of the term "*full* possession" at the death of her mother
is implied that the testator meant that his daughter should
have some sort of interest in the property before the death of
her mother—some right short of full possession—until the
happening of that event. There can arise no doubt but the
testator intended to devise the whole estate in his farm to his
wife and only daughter; to his wife, the use and enjoyment
during her life, and, upon her death, the full possession—that
is, the full enjoyment of the estate in fee—to his daughter.
The proviso, paraphrased, reads thus: "Provided she (my
daughter) shall be living, and, if she is not living at my
death, at the death or marriage of my wife then the estate
to go to my brothers and sisters or their heirs." If it may
be said from the words used that the time of survivorship of
the daughter is doubtful, the well established rules of con-
struction require us to construe the words referring to the
death of the daughter to relate to the death of the testator,
and the clause, "at the death or marriage of my wife then

the estate to go to the use of my brothers and sisters or their heirs" to relate to the vesting of the remainder in the brothers and sisters at the death of the testator, contingent upon the death of Maria Louisa prior to that time. Such a construction accords with legal principles. It is invoked by a common sense of natural justice. It responds to the sentiment of natural affection borne by a parent to his offspring. It secures the inheritance to direct descendants. It asserts a vested remainder as against an executory devise. It secures the vesting of the estate at the earliest possible period.

Judgment reversed, and cause remanded, with instructions to sustain each of the separate demurrers of appellants to the complaint.