TAYLOR *v.* STEPHENS, ADMINISTRATOR, ET AL.

[No. 20,666.    Filed June 23, 1905.]

1. ESTATES. — *Vesting.* — *Wills.* — *Words of Survivorship.—Presumption.*—The law favors that interpretation of a will which permits the estate to vest at the earliest moment, and words of survivorship are presumed, unless a contrary intention clearly appears, to relate to the death of testator.    p. 202.

2. WILLS.—*Construction.—Rules of Law.*—The terms of a will will be construed in accordance with the intention of the testator where such intention does not conflict with the law, the presumption being that such will was drawn in the light of the settled meaning attached to the words used therein.    p. 204.

3. SAME.—*Estates.—Vesting.—Period of Enjoyment.*—A will devising lands to testator's widow "during her natural life" and at her death the lands to "be owned" by testator's children vests

the remainder in such children at testator's death, but postpones the enjoyment thereof to the time of the death of such widow. p. 204.

4. WILLS. —*Construction.* — *Estates.* — *Vesting.*—*Language.*—A will devising lands to testator's widow for life and at her death to "be owned" by testator's children, "or in case of the decease of any of said children, his or her share to descend to the heirs of their bodies" gives such testator's children a vested remainder and the gift over is substitutional, the word "descend" being used in the sense of "go to." p. 205.

5. SAME.—*Joint Tenancy.*—*Tenancy in Common.*—A will devising lands to testator's widow for life, remainder to testator's children, and "in case of the decease of any of said children, his or her share to descend to the heirs of their bodies," creates a tenancy in common, and not a joint tenancy, in testator's children. p. 206.

6. SAME.—*Joint Tenancy.*—*Tenancy in Common.*—*Statutes.*—A will devising lands to testator's widow for life, remainder to testator's children "equally and jointly," creates a tenancy in common, and not a joint tenancy, in such children, since by statute (§3341 Burns 1901, §2922 R. S. 1881) all conveyances and devises to two or more persons shall be construed to create estates in common, unless it manifestly appears otherwise, the word "jointly" indicating a joint tenancy and the word "equally" a tenancy in common. p. 207.

7. SAME.—*Joint Tenancy.*—*Tenancy in Common.*—A will devising lands to testator's widow, remainder to testator's children, and in case of the death of any of such children, his share to go to the heirs of such child's body, shows an intention to create a tenancy in common in such children. p. 208.

8. SAME.—*Intention.*—*Estates Created.*—Where a will shows an evident purpose in testator to provide primarily for his own children the strong presumption follows that an estate in common was devised, since a joint tenancy would cause such children and any grandchildren taking under such will to take *per capita* and not *per stirpes.* p. 209.

From Warren Circuit Court; *Joseph M. Rabb,* Judge.

Petition by John C. Stephens as administrator of the estate of William N. Swank, deceased, against Emily J. Taylor and others. From a decree for plaintiff, defendant Emily J. Taylor appeals. Transferred from Appellate Court under subd. 2, §1337j Burns 1901, Acts 1901, p. 565, §10. *Affirmed.*

*C. C. Holland,* for appellant.

*C. V. McAdams* and *Isaac E. Schoonover,* for appellee Stephens.

GILLETT, J—This was a proceeding which was instituted by the administrator of William N. Swank, deceased, to sell real estate to pay debts and the widow's statutory allowance.

It appears from the petition that in the year 1872 James C. Swank departed this life testate, the owner in fee of eighty acres of land, leaving surviving him his widow and four children, one of whom was said William N. Swank. At the time of the bringing of this proceeding the widow of said James C. Swank still survived. The will of said last-named decedent contained the following provision: "I also desire that my said wife, Melissa, have the use and occupancy of any and all lands that I may own at my decease during her natural life, on the condition that she pay the taxes on, and keep said lands free from encumbrances, and at the decease of my said wife I desire that said lands be owned equally and jointly by my children, Emily J. Taylor, William N. Swank, John E. Swank and Sarah J. Swank, or in case of the decease of any of said children, his or her share to descend to the heirs of their bodies, if any, and if not, to those surviving."

Certain practice questions are urged by appellee Stephens, but as it is agreed by the parties that the foundation questions in this case go to the construction of the provision of said will which is above set out, we proceed to the consideration of the latter questions.

Did William N. Swank, upon the death of his father, have a vested remainder in one-fourth of said land, subject to a particular estate in the widow, Melissa? The

1. law favors an interpretation which will permit estates to vest at the earliest possible moment, and, to that end, words of survivorship in a will are construed as referring to the death of the testator in all cases where the words of the instrument are not such as clearly to show that

they refer to a subsequent date. *Harris* v. *Carpenter* (1887), 109 Ind. 540; *Hoover* v. *Hoover* (1889), 116 Ind. 498; *Amos* v. *Amos* (1889), 117 Ind. 37; *Bruce* v. *Bissell* (1889), 119 Ind. 525, 12 Am. St. 436; *Heilman* v. *Heilman* (1891), 129 Ind. 59; *Wright* v. *Charley* (1891), 129 Ind. 257; *Fowler* v. *Duhme* (1896), 143 Ind. 248; *Tindall* v. *Miller* (1896), 143 Ind. 337; *Moores* v. *Hare* (1896), 144 Ind. 573; *Aspy* v. *Lewis* (1899), 152 Ind. 493. This court said in *Amos* v. *Amos, supra:* "We affirm, as an established principle, that the law not only favors the vesting of remainders, but it also presumes that words postponing the estate relate to the beginning of the enjoyment of the remainder and not to the vesting of that estate."

The rule of interpretation above stated rests not alone in public policy, but it finds a justification in the fact that in most wills wherein language is used which, upon superficial consideration, might seem to lead to the conclusion that it was the design of the testator to postpone the vesting of the estate beyond his own death, an adequate explanation is found in the general tendency of testators to look forward to the time when the devisee will enjoy the estate in possession, and to overlook the proposition that it is necessary that at or prior to the time of entering upon the possession the right to the property should vest. These views find expression in *McArthur* v. *Scott* (1884), 113 U. S. 340, 378, 5 Sup. Ct. 652, 28 L. Ed. 1015, where it was said: "For many reasons, not the least of which are that testators usually have in mind the actual enjoyment rather than the technical ownership of their property, and that sound policy as well as practical convenience requires that titles should be vested at the earliest period, it has long been a settled rule of construction in the courts of England and America that estates, legal or equitable, given by will, should always be regarded as vesting immediately, unless the testator has by very clear words manifested an intention that they should be contingent upon a future event."

As has been often announced, the intention of the testator is to prevail where it does not conflict with the law, but the fact is not to be forgotten that, in the disposition 2. of the nebula of will cases, the courts have evolved rules of construction which can scarcely be said to be subsidiary to the intention of the testator, since it must be presumed, in the absence of language in the will repelling the inference, that he acted in the light of the settled meaning which the law attached to his words. *Fowler* v. *Duhme, supra; Leathers* v. *Gray* (1888), 101 N. C. 162, 7 S. E. 657, 9 Am. St. 30.

Of course, there is no iron rule of law binding words of survivorship to the time that the will takes effect, and therefore the courts will look to the language of the instrument in endeavoring to ascertain the intention of the testator; but the effect of the rule, prescribing, as it does, the meaning of the will in the absence of a clear expression to the contrary, is to interdict the effort to draw up the intention of the testator from the depths of his words after it is perceived that the intent is not clear.

We have found no difficulty in reaching the conclusion in this case that the children of the testator took a vested remainder upon the death of the latter. The whole 3. trend of Indiana authority supports this view, of which the following cases are particularly in point upon the facts: *Harris* v. *Carpenter, supra; Hoover* v. *Hoover, supra.* It is true that in the will before us the testator expresses his "desire that said lands be owned" by his children "at the decease of" his wife, but this language is by no means as persuasive of a purpose upon his part to postpone the vesting of the remainder as in the wills under construction in the two cases last cited, wherein it appears that after the creation of a life estate in the wife the testator had provided that upon her death the real estate should "pass to" the second taker. The provision in the will before us that the lands are to "be owned" by the children upon

the decease of the testator's wife does not create a necessary implication that the fee was then to vest, for the language may be regarded as referring to the period when the children should enjoy the estate. That this idea was the one which was in the foreground of the testator's mind in making the devise in question may be inferred from the fact that he wholly omits in terms to devise his wife anything, but expresses his undoubted intention that she should have a life estate by the statement of his desire that she should "have the use and occupancy" of the property during her life. It was said in *Doe* v. *Considine* (1867), 6 Wall. 458, 475, 18 L. Ed. 869: "Adverbs of time—as where, there, after, from, etc.—in a devise of a remainder, are construed to relate merely to the time of the enjoyment of the estate, and not to the time of the vesting in interest."

We have not failed to observe that in the latter part of the language quoted the will provides that in case of the decease of a child his share shall descend to the
4. heirs of his body. This does not prevent the view that the class was to be ascertained at the death of the testator. The children were *in esse,* and it is evident that, if the words "heirs of their bodies" were not used as words of limitation, the gift to such heirs was substitutional, and, as said in Williams, Real Prop. (17th ed.), 287: "The heirs are no objects of the testator's bounty, further than as connected with their ancestor." It is to be recollected that the testator was providing for the disposition of his estate by will, and, even if the bequest were to operate as an executory devise (a construction not favored), it would still follow that the case was one wherein the testator was by will giving direction concerning his property; and therefore we would not be doing violence to the testator's intention, as manifested by his language, to hold that the word "descend" was used in the sense of "go to," a construction which has often been adopted in will cases. *Borgner* v. *Brown* (1893), 133 Ind. 391, and cases cited; *Dennett* v. *Dennett*

.(1860), 40 N. II. 498; *Halstead* v. *Hall* (1883), 60 Md. 209; *Stralton* v. *McKinnie* (1900), (Tenn.) 62 S. W. 636. And see *Doren* v. *Gillum* (1893), 136 Ind. 134. Upon a careful consideration of the matter we are .clearly of opinion that the children named in the will took a vested remainder upon the death of the testator.

It is next contended by appellant's counsel that the estate created by the testator was a joint estate, and that therefore no interest remains which can be subjected to sale by the administrator of said William N. Swank. The language of the will which it is relevant to consider in this connection is as follows: "At the decease of my said wife I desire that said lands be owned equally and jointly by my children, Emily J. Taylor, William N. Swank, John E. Swank and Sarah J. Swank, or in case of the decease of any of said children, his or her share to descend to the heirs of their bodies, if any, and if not, to those surviving."

"The properties of a joint estate are derived from its unity, which is four-fold: the unity of interest, the unity of title, the unity of time, and the unity of possession; or, in other words, joint tenants have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession." 2 Blackstone's Comm., *180. Looking to the provisions of said will as to the share of any deceased child going to the heirs of his body, it becomes evident that it was within the contemplation of the testator that at the time of his death (to which, as we have seen, the words of survivorship must be referred) the share of a child who should die might be split up into two or more shares, according to the number of children that such child might leave. This of itself is sufficient to show that the testator did not intend to create a joint tenancy, for unity of interest requires that the shares of the joint tenants, whatever their

number, shall be equal. 2 Blackstone's Comm., *181; *Craig* v. *Taylor* (1846), 6 B. Mon. 457; 2 Jones, Real Prop., §1772.

But we are of opinion that, apart from the above proposition, the ruling on the point under consideration must be against appellant. Joint tenancies, as contradistinguished from tenancies by entireties, have been much in disfavor since feudal times, because of the principal incident of survivorship; and in a large number of states, including Indiana, this spirit of hostility has crystalized in legislative restrictions. Section 3341 Burns 1901, §2922 R. S. 1881, provides: "All conveyances and devises of lands, or of any interest therein, made to two or more persons, except as provided in the next following section, shall be construed to create estates in common and not in joint tenancy, unless it shall be expressed therein that the grantees or devisees shall hold the same in joint tenancy and to the survivor of them, or it shall manifestly appear, from the tenor of the instrument, that it was intended to create an estate in joint tenancy." The section which is referred to in §3341, *supra,* has no relation to the question in hand.

It has been held in this State that a deed to L. R. and J. R. jointly conveyed an estate in joint tenancy. *Case* v. *Owen* (1894), 139 Ind. 22, 47 Am. St. 253. It does not, however, admit of question that tenants in common have a unity of possession (2 Blackstone's Comm., *191; 4 Kent's Comm., *357; *Bevins* v. *Cline* [1863], 21 Ind. 37), although not of title, and therefore a court, in considering the word "jointly," is not necessarily put to the dernier resort of rejecting it, or of holding that a joint tenancy has thereby been created. · *Davis* v. *Smith* (1843), 4 Har. (Del.) 68; *Billingslea* v. *Baldwin* (1865), 23 Md. 85, 115; *Mustain* v. *Gardner* (1903), 203 Ill. 284, 67 N. E. 779. But granting that the word, without restrictive language, is sufficient, notwithstanding the statute, to create a joint tenancy, we can

not consent that it be given controlling force in cases where it is found associated with other words or provisions which tend to rebut what is perhaps its *prima facie* meaning. The word "equally," at least if it is not found in company with some more controlling word, has always been regarded as implying a tenancy in common *(Robertson* v. *Fraser* [1871], L. R. 6 Ch. *696; *Begley* v. *Cook* [1856], 3 Drew. 662; 2 Powell, Devises, 370; Freeman, Cotenancy [2d ed.], §23), and, this being true, we are of opinion that the use of that word is a circumstance to be considered in determining the intent of the testator. It is certain, in view of the statute, that the word "jointly" will not bear any imposed weight.

There remains the further fact that the provision in regard to the share of a deceased child going to the heirs of his body tends to show that a tenancy in common was intended, since, as a joint tenant is, as to his companion, while the tenancy exists, seized of the whole, the recognition of a several interest in one tenant, as where his interest is referred to as a share, tends to show that a joint tenancy was not intended.

In *Heathe* v. *Heathe* (1740), 2 Atk. 124, Mr. Justice Parker said: "A question that was made upon the first will, whether the words 'share and share alike' made a tenancy in common or a joint tenancy, is given up, and very rightly; for it has been held these two hundred years to be a tenancy in common." In the old case, of *Torret* v. *Frampton* (1654), Style 434, a will was under construction, in which, as the case is reported, a man devised his lands to his wife for her life, and the remainder to A, B and C, and their heirs respectively. In disposing of the case, Roll, C. J., said: "I hold here is a tenancy in common, and that it shall go throughout, and is not to be divided, and the intent of the devisor appears in the will that every one shall have his part, and their heirs, for here is a provision made

for children, and the word respectively would be idle, if another construction should be made, and would signify no more than what the law said without it."

In addition to the more or less technical considerations which we have suggested as to the effect of the language, it appears to us that the very circumstance that the 8. testator was providing primarily for his children renders it exceedingly improbable that he would have made such a provision that grandchildren, who would naturally be expected to take *per stirpes,* should be put on a *per capita* basis with such of the children as should survive.

We are of opinion, in view of the statute, that the will in question did not create a joint tenancy in the remaindermen.

We have now considered the propositions asserted by appellant's counsel as grounds for the holding that William N. Swank had no interest in the real estate, and, as our conclusion upon said points is adverse to appellant, the judgment is affirmed.