ALDRED v. SYLVESTER ET AL.

[No. 22,933. Filed March 15, 1916.]

1. WILLS.—*Construction.*—*Remainders.*—*Nature of Estates Created.*—Under a will devising land for life and ordering and directing that at the death of the life tenant the land be sold and the proceeds equally divided among the brothers and sister of testator, and further providing that if any of the last named should die previous to the termination of the life estate and the sale of the land, the descendants of such deceased devisees should receive the same share as their ancestors would have had if living, the termination of the life estate was the period fixed for the commencement of the enjoyment of the estate by the remaindermen and not the time for the vesting of the title in them, while the provision in contemplation of the death of any of the remaindermen had reference to such death during the lifetime of the testator, so that the fee simple absolute subject to the life estate vested in the remaindermen immediately upon testator's death, and a conveyance after testator's death in which the life tenant and remaindermen joined vested the grantee with perfect title as against the claims of the children of one of the remaindermen who subsequently died during the lifetime of the life tenant. (*Corey* v. *Springer* [1894], 138 Ind. 506, overruled, and *Jones* v. *Miller*, [1859], 13 Ind. 337, and *Smith* v. *Hunter* [1864], 23 Ind. 580, disapproved.) pp. 544, 550, 560, 561, 564.

2. WILLS.—*Construction.*—*Intention of Testator.*—Where from a consideration of the entire will, the testator's intention clearly appears it must be given effect, since the courts have no power to make or alter wills; but where the intent is obscured by ambiguous phraseology, the courts must seek it in the light of recognized rules of construction. p. 546.

3. WILLS.—*Construction.*—*Application of Rules of Construction.*—Since the power to dispose of property by will is a creature of the statute (§3112 Burns 1914, §2556 R. S. 1881), and as the common law whereby certain rules for the construction of wills were recognized, was readopted as a part of the State's system of jurisprudence, a testator will be presumed to know that obscure phrases may be subjected to the test of well-recognized rules of construction, and if, because of his ignorance and heedlessness of the law his real designs are thwarted, those actually intended as the objects of his bounty have no more just cause of complaint than those who suffer in other matters by ignorance or disregard of recognized legal rules. p. 547.

4. WILLS.—*Construction.*—*Application of Rules of Construction.*—Where the intention of a testator is obscured by the phraseology of the will, the application of recognized rules of construction, even if adverse to the interests of those actually intended as the objects

Aldred *v.* Sylvester—184 Ind. 542.

of his bounty, finds justification in view of the importance of substituting certainty for doubt in real estate titles, and the policy of the law to discourage rather than promote avoidable litigation. p. 547.

5. WILLS.—*Construction.—Vesting of Estates.*—In the construction of wills the courts recognize the fact from common experience that testators are generally inclined to have in mind the time when the devisee of the ulterior interest will enjoy the estate devised, in possession, and overlook the propriety of fixing with certainty the time of vesting of such estate in the devisee. p. 547.

6. WILLS.—*Construction.—Vesting of Estates.*—The law so favors the vesting of estates at the earliest opportunity and is so averse to a postponement thereof that they will be deemed as vesting at the earliest possible period, in the absence of a clear manifestation of the contrary intention. p. 548.

7. WILLS.—*Construction.—Words of Postponement.—Words of Survivorship.*—Words of postponement in a will are presumed to relate to the beginning of the enjoyment of the estate, rather than to its vesting and words of survivorship are presumed to relate to the death of the testator, rather than that of the first taker, if they are fairly capable of such interpretation. p. 548.

8. WILLS.—*Construction.—Nature of Estate Created.*—Courts will not construe a limitation into an executory devise when it can take effect as a remainder, nor a remainder to be contingent where it can be taken as vested. p. 549.

9. WILLS.—*Construction.—Power of Sale.*—The direction in a will devising a life estate, that at the death of the life tenant the land be sold and the proceeds equally divided among the brothers and sister of testator, does not purport to confer a power of sale on the executor, and such power is not fairly inferable therefrom in view of §2906 Burns 1914, Acts 1883 p. 159, which contemplates a settlement of a decedent's estate a year after issuance of letters testamentary, unless for cause shown; and if such power were implied, it would be a mere naked one uncoupled with any interest. p. 549.

10. WILLS.—*Construction.—Conditions Subsequent.*—Conditions subsequent of a class which tends to destroy estates are not favored. p. 560.

11. ESTATES.—*"Determinable Fees."*—Determinable fees are recognized in Indiana, and are such interests which may continue forever, but which are liable to be determined by some act or event, and they are deemed fees because of their enduring forever. p. 561.

12. WILLS.—*Lapse.—Statutes.—Devises to Collaterals.*—Section 3127 Burns 1914, §2571 R. S. 1881, changes the common-law rule as to the lapsing of devises in case of devises to descendants, but not as to collaterals. p. 564.

From Hamilton Circuit Court; *Meade Vestal*, Judge.

Action by Minda Aldred against Elizabeth Sylvester and others. From a judgment for defendants, the plaintiff appeals. (Transferred from the Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.) *Reversed.*

*Gentry & Cloe, J. A. Roberts* and *Shirts & Fertig,* for appellant.

*Kane & Kane,* for appellee.

MORRIS, C. J.—Suit by appellant to quiet title. The complaint was originally in four paragraphs, but the first and second were dismissed. Demurrers were sustained to the third and fourth, and these rulings are presented here for review. By the third paragraph it appears that on May 14, 1872, John Castor owned the 80-acre tract of land in controversy, and other lands. His nearest kindred were his sister, Lorinda Smith, and Thomas and Conrad Castor, his brothers. On said day he made his will, by the first item of which he devised to Emily Castor the fee simple of a 40-acre tract of land. By the second item he devised a life estate, only, in the 80-acre tract in question, to Margaret McDaniel. Item three, relating to the same land, reads as follows:

> "Item III. I further order and direct, that at the death of said Margaret McDaniel (above named) that the said 80-acres tract of land above described be sold at private or public sale as may be most advisable, and for the best price that can be procured for the same, and that the proceeds of such sale be equally divided among my brothers and sister to wit: Lorinda Smith (wife of Thomas Smith), Thomas Castor and Conrad Castor. But if any or either of said brothers and sisters last named shall die previous to the termination of such life estate, and the sale of said 80-acre tract, then in that case, the descendants of such de-

ceased devisees are to have the same share as their ancestors would have had if then living."

Item five reads as follows:

"Item V. The balance and residue of my property * * * I give and devise to the said Lorinda Smith, Thomas Castor and Conrad Castor (or their descendants) to be equally divided between them share and share alike."

The testator died in 1880, the owner of the land in question. When he died, his sister and brothers were living. Margaret McDaniel still survives. Lorinda Smith died intestate previous to 1891, leaving children and heirs, who were made defendants in this action and who were defaulted. Thomas Castor also died intestate previous to 1891, leaving children and heirs, who were parties to this suit, and defaulted. In August, 1891, Margaret McDaniel, life tenant, Conrad Castor, and the heirs of Lorinda Smith and Thomas Castor executed their warranty deeds to the 80-acre tract to named grantees, who at once took possession of the land, and held the same, and afterwards conveyed it to appellant, who has since been in possession under claim of absolute ownership. Conrad Castor, after the execution of his deeds, died intestate, leaving appellees as his descendants and heirs at law.

If, as appellant contends, Conrad Castor took a fee simple absolute, which vested on testator's death, the court erred in sustaining the demurrer to the third paragraph. Appellees contend that at the death of testator the fee vested in Conrad Castor and his brother and sister, but that such fee was a base or determinable one that divested as to each on his death during the life of Margaret McDaniel: that on the death of Conrad Castor his title deter-

mined, and his descendants, appellees here, on the
happening of the contingency took the absolute fee
by executory devise, subject only to the life estate
of Margaret McDaniel. Appellees further say that
it was not intended by the testator that the title to
the 80-acre tract should be affected by item five
containing the residuary provision. In support of
their theory appellees rely especially on *Jones* v.
*Miller* (1859), 13 Ind. 337; *Smith* v. *Hunter* (1864),
23 Ind. 580; and *Corey* v. *Springer* (1894), 138 Ind.
506, 37 N. E. 322.

In all cases, where, from a consideration of the
entire will the testator's intention clearly appears it
must be given effect. Courts are invested
2.  with no power to make or alter wills. But
where the intent is obscured by ambiguous
phraseology, it is the duty of courts to seek it in the
light of recognized rules of construction. In the dis-
cussion of this subject, a distinguished author said:
"It is necessary therefore to remind the reader that
the language of courts, when they speak of the in-
tention as the governing principle, sometimes call-
ing it 'the law' of the instrument, sometimes the
'pole star,' sometimes the 'sovereign guide,' must
always be understood with this important limita-
tion—that here, as in other instances, the judges
submit to be bound by precedents and authorities in
point; and endeavor, as we have seen, to collect the
intention upon grounds of a judicial nature, as dis-
tinguished from arbitrary occasional conjecture."
3 Jarman, Wills (5th Am. ed.) 700. It often hap-
pens that the testator's real intent is so clouded by
ambiguous words or phrases as to render its dis-
covery a mere matter of conjecture. In such cases
the declared results must necessarily vary with the
elasticity of imagination of the various judges that
may be concerned in the determination, if only the

Aldred *v.* Sylvester—184 Ind. 542.

language of the will may be considered. Viewed, however, in the light of rules evolved from the observation and experience of centuries, it may be asserted with confidence that the real intent is more apt to be revealed. But if this is not true, the fact remains that in Indiana the power to dispose

3. of property by will is a creature of our statute, readopted in 1852. §3112 Burns 1914, §2556 R. S. 1881. The same legislature readopted

4. the common law as a part of our system of jurisprudence. §236 Burns 1914, §236 R. S. 1881. Certain rules in the construction of wills were recognized by the common law. Consequently the testator must be presumed to know that obscure phrases may be subjected to the test of well-recognized rules of construction. If, because of his ignorance or heedlessness of the law his real designs are thwarted, those actually intended as the objects of his bounty have no more just cause of complaint than do those who suffer in other matters by ignorance or disregard of recognized legal rules. Of most importance however is the substitution, for doubt, of certainty in real estate titles. It is the policy of the law to discourage rather than promote avoidable litigation, and resort to well known rules of construction tends to avoid the delay and expense of appeals to courts of last resort to determine the status of real estate titles. 3 Jarman, Wills 701.

A consideration of cases involving the interpretation of wills shows that the most frequent questions presented arise from ambiguous phraseology

5. in regard to the time of vesting of ulterior interests where a particular estate is created—whether the ulterior interest vests at testator's death, or at some subsequent time. The courts recognize the fact from common experience that testators are generally inclined to have in mind the

time when the devisee of the ulterior interest will enjoy the estate devised, in possession, and overlook the propriety of fixing with certainty the time of vesting of such estate in the devisee. *Taylor* v. *Stephens* (1905), 165 Ind. 200, 203, 74 N. E. 980; 2 Jarman, Wills 407. In discussing this subject, it was said in an opinion delivered by Mr. Justice Gray: "For many reasons, not the least of which are that testators usually have in mind the actual enjoyment rather than the technical ownership of their property, and that sound policy as well as practical convenience requires that titles should be vested at the earliest period, it has long been a settled rule of construction in the courts of England and America that estates, legal or equitable, given by will, should always be regarded as vesting immediately, unless the testator has by very clear words manifested an intention that they should be contingent upon a future event." *McArthur* v. *Scott* (1885), 113 U. S. 340, 378, 5 Sup. Ct. 652, 28 L. Ed. 1015. In *Doe* v. *Considine* (1867), 6 Wall. 458, 475, 18 L. Ed. 869, in an opinion delivered by Mr. Justice Swayne, it was held: "Adverbs of time—as *where, there, after, from,* etc.,—in a devise of a remainder, are construed to relate merely to the time of the enjoyment of the estate, and not to the time of the vesting in interest." This court has with practical uniformity and consistency recognized the existence of the following rules where particular and future estates are created: (1) the law so favors the vesting of estates at the earliest opportunity and is so averse to a postponement thereof that they will be deemed as vesting at the earliest possible period, in the absence of a *clear manifestation* of the contrary intention; (2) words of postponement are presumed to relate to the beginning of the enjoyment of the

estate, rather than to its vesting; (3) words of survivorship are presumed to relate to the death of testator, rather than that of the first taker, if they are fairly capable of such interpretation. *Aspey* v. *Lewis* (1899), 152 Ind. 493, 52 N. E. 756; *Myers* v. *Carney* (1908), 171 Ind. 379, 84 N. E. 400; *Fowler* v. *Duhme* (1896), 143 Ind. 248, 42 N. E. 623; *Campbell* v. *Bradford* (1906), 166 Ind. 451, 77 N. E. 849; *Taylor* v. *Stephens, supra; Moores* v. *Hare* (1896), 144 Ind. 573, 43 N. E. 870; *Tindall* v. *Miller* (1896), 143 Ind. 337, 41 N. E. 535; *Borgner* v. *Brown* (1893), 133 Ind. 391, 33 N. E. 92; *Wright* v. *Charley* (1891), 129 Ind. 257, 28 N. E. 706; *Heilman* v. *Heilman* (1891), 129 Ind. 59, 28 N. E. 310; *Bruce* v. *Bissell* (1889), 119 Ind. 525, 22 N. E. 4, 12 Am. St. 436; *Amos* v. *Amos* (1889), 117 Ind. 19, 19 N. E. 539; *Hoover* v. *Hoover* (1888), 116 Ind. 498, 19 N. E. 468; *Harris* v. *Carpenter* (1887), 109 Ind. 540, 10 N. E. 422; *Davidson* v. *Koehler* (1881), 76 Ind. 398; *Rumsey* v. *Durham* (1854), 5 Ind. 71. It is also well settled by our decisions that courts will not

8. construe a limitation into an executory devise when it can take effect as a remainder nor a remainder to be contingent where it can be taken as vested. *Fowler* v. *Duhme, supra*, 267; *Carnahan* v. *Freeman* (1915), 183 Ind. 271, 108 N. E. 955; *Moore* v. *Lyons* (1840), 25 Wend. 119.

Counsel for appellee appear to attach no significance to the direction for sale of the real estate after the death of the life tenant. The direction

9. does not purport to confer a power of sale on the executor, and such power is not fairly inferable since the law contemplates a settlement of a decedent's estate a year after the issuance of letters testamentary, unless for cause shown. §2906 Burns 1914, Acts 1883 p. 159. The testator must have contemplated that the life tenant might live as

long as in fact she has lived since his death—thirty-six years. Moreover if such power were implied, it would be a mere naked one uncoupled with any interest. *Broomfield* v. *Drook* (1885), 101 Ind. 190. The testator likely deemed the tract not divisible into three parts for the purpose of the enjoyment of possession, and contemplated a sale by the devisees or a commissioner in partition and a division of the proceeds among the beneficiaries. But this subject requires no further consideration because appellees' counsel say that the will fixes the exact time until which the brothers and sister of the testator must have lived for their estates to ripen from a vested determinable fee into a fee simple absolute, and that having died in the lifetime of the life tenant their estates determined.

In *Taylor* v. *Stephens* (1905), 165 Ind. 200, 74 N. E. 980, this court construed the will of William N. Swank, which devised a life estate in lands to his widow and further provided that "at the decease of my said wife I desire that said lands be owned equally and jointly by my children, Emily J. Taylor, William N. Swank, John E. Swank and Sarah J. Swank, or in case of the decease of any of said children, his or her share to descend to the heirs of their bodies, if any, and if not, to those surviving." William N. Swank, died after death of testator leaving a widow, and his administrator filed a petition to sell his interest in the land to pay debts and his widow's statutory allowance. The widow of the testator was still living. It was held that William N. Swank took a remainder in fee which vested in him absolutely on testator's death, and that a joint tenancy was not created. In *Moores* v. *Hare, supra,* the will devised a life estate to testator's daughter, Maria F. Ritzinger, followed by this: "At the death of her, said Maria F.

Ritzinger, all the said real estate so devised to her for life shall go to her children in fee simple. If any child of hers shall have died, leaving a child or children, then the portion of said real estate that would have gone to the parent shall go to such child or children." It was held that the life tenant's children (two of whom had children surviving, and who were parties to the action) took a vested remainder on testator's death and that the clause "If any child of hers shall have died leaving a child or children", referred to death during testator's lifetime. In *Tindall* v. *Miller* (1896), 143 Ind. 337, 41 N. E. 535, the devise was to the widow for life, and "at the death of my said wife the above described property shall pass absolute to my daughter, Julia, *if she still survive. If she shall be deceased, it is my desire that the property do pass to her heirs.*" (Italics here, and throughout opinion, ours.) The widow and Julia survived testator, and conveyed the property to a third person. Julia afterward died leaving heirs. Subsequently the widow died. In an action between the grantees named in the deed and the heirs of Julia, it was held that the fee simple vested absolutely in the daughter on testator's death. In *Harris* v. *Carpenter, supra,* the testator devised a life estate in land to his widow and "at her death the same shall be the property of and pass to my daughter, Laura Carpenter * * * in fee; *but if she, said Laura, be not living, then to her heirs forever.*" The widow and Laura survived testator and sold the land. In an action by the purchaser to quiet title against the children of Laura, who were in existence when the will was made, it was held that Laura took a fee simple on testator's death.

In *Hoover* v. *Hoover, supra,* Daniel Hoover devised a life estate to his widow, "and, at her death,

said real estate to pass in fee simple, in equal portions, to my son, Andrew Hoover and my daughter, Hattie Hoover. The east half of said farm to go to * * * Andrew, *if he be living*, and *if he be dead*, then to his widow until her death or marriage, and at her death or marriage then, to go to his heirs, and if there be no heirs living, then said land shall pass to the heirs of Daniel Hoover." The widow survived testator, and afterwards conveyed her life estate to Andrew. At testator's death Andrew had a wife and two children. In an action by Andrew to quiet title against his children, wife and mother, and others, it was contended by appellants that the devise to Andrew was a contingent remainder vesting only in the event that he survived his mother, or, if the estate devised vested at testator's death it was a determinable fee which would divest on his death before that of his mother. In a learned opinion by Mitchell, J., it was first held that the contention relating to a determinable fee was untenable, and in the discussion relating to the other contention it was said: "Accepting the position as established, that words of survivorship in a will, unless there is a manifest intent to the contrary, always relate to the death of the testator, and that, in the absence of a contrary intent, a will always speaks as from the date of the testator's death, there can be no doubt but that Andrew P. Hoover took an estate in fee simple in remainder, which vested immediately upon the death of his father, but which he could only enjoy, in possession, after the termination of the life estate of his mother. An estate in remainder is not rendered contingent by the uncertainty of the time of enjoyment. The right and capacity of the remainderman to take possession of the estate, if the possession were to become vacant, and the certainty that the event, upon which the

vacancy depends, must happen sometime, and not the certainty that it will happen in the lifetime of the remainderman, determine whether or not the estate is vested or contingent. *Croxall* v. *Shererd* [1866], 5 Wall. 268; Tiedeman, Real Prop. §401. Having taken a conveyance from the life tenant, thus terminating her estate in a portion of the farm, there can be no doubt of the appellee's right to maintain an action now, as to that part of the land, at least."

In *Aspey* v. *Lewis*, *supra*, after devising a widow's life estate the will provided "And I direct further that the above estate that is bequeathed to my wife shall be in the full possession of my only daughter, Maria Louisa, at the death or marriage of my wife, provided she shall be living; and if she is not living, at the death or marriage of my wife then the estate to go to the use of my brothers and sisters or their heirs." The widow, daughter, and several brothers and sisters survived testator. The daughter married, and had children, but died before the death of her mother. In a suit to quiet title, by the widower and children of Maria Louisa (appellants), against testator's brothers and sisters, on the theory that a fee simple absolute vested in the daughter on the testator's death, it was held by this court that appellant's theory was correct. In the opinion by Hadley, J., it was said: "If it may be said from the words used that the time of survivorship of the daughter is doubtful, the well-established rules of construction require us to construe the words referring to the death of the daughter to relate to the death of the testator, and the clause, 'at the death or marriage of my wife then the estate to go to the use of my brothers and sisters or their heirs' to relate to the vesting of the remainder in the brothers and sisters at the death of the testator, contingent upon

the death of Maria Louisa prior to that time. Such a construction accords with legal principles." In *Myers* v. *Carney, supra*, the testator devised, by the first item, an estate to his wife during widowhood or life. Item two provided that *"when my said wife shall cease to be my widow either by marriage or death,* it is my will that my real estate shall be sold and the proceeds thereof *distributed* as follows, to wit: To * * * Elizabeth Myers (and five other children) each the undivided one-eighth of the proceeds of the sale of said real estate." Item five provided that "If * * * either one of my living children shall die before the *distribution* of my estate as hereinbefore provided, his or her portion shall descend as provided by law where a person dies intestate." At testator's death his widow and children survived. Elizabeth Myers was then married and had a child, which died before the death of Elizabeth. Elizabeth died leaving her husband as sole heir. Testator's widow died nearly eleven years later. It was held that the interest of Elizabeth vested absolutely on testator's death, and that her husband took it as her sole heir.

In *Heilman* v. *Heilman, supra*, it appears that items 6 and 7 of the will of William Heilman were as follows: "Sixth. To my dear wife, Mary Jenner Heilman, I give and bequeath all the rest of my property, real and personal, to be had and held by her during her natural life, and so long as she remains my unmarried widow. Should my said wife marry again, then she shall receive from my estate the amount and portion allowed her by law, and no more. Seventh. After the death of my dear wife all my estate, excepting the bequests herein made, shall be divided in equal shares among all my children, and should any of my children be dead, and have left children, then they shall be entitled to the distribu-

tive share of their parents." The testator was survived by his widow, and sons and daughters. His son, George P. Heilman had living children, and, in the widow's lifetime, sold specific portions of his legacy to the appellee in that case. In a suit by the purchaser, against the children of said George P., to quiet title, it was held that the title to the legacy vested in George P. on the death of testator; that the words of postponement related to the enjoyment of the estate, and not its time of vesting; that the reference to testator's grandchildren was intended to prevent the lapsing of bequests, though unnecessary under §§2567, 2571 R. S. 1881; that appellant's contention that, since the will there (as here) contained no express language of gift to the secondary devisees, but simply a direction to divide the estate among them after the death of the life tenant it should be held as showing the testator's intent that the time fixed for distribution determined the period of vesting as well as enjoyment in possession, should not prevail. The opinion in that case has been cited with approval repeatedly, and recently, by this court. See *Myers* v. *Carney, supra.* In *Davidson* v. *Koehler, supra,* the will of Governor Noah Noble was construed. By the second item of his will he devised a life estate to his widow. The third item provided that "At the death of my wife, if my son shall then be living and of age, or as soon thereafter as he shall become of age, or if he shall then be dead, I direct that my home farm shall then be divided among my children *then living*, share and share alike, taking into consideration any advancements herein by me made to any such child, so as to make the shares of my estate equal; and in case any of my children shall have died after my decease, and before such division, the heirs or representatives of such deceased child shall be entitled to such share as

their respective ancestors would have received if then living." Governor Noble died in 1844, leaving surviving him his widow, and two children, Winston P. Noble and Catherine Davidson, as his only heirs. Catherine Davidson died in 1857, and left surviving her a husband and five children. The widow of the Governor died in 1874. It was held that the children took at testator's death a vested estate in the home farm. In *Rumsey* v. *Durham, supra,* there was a devise to the widow during widowhood or life, followed by this: "2. After the death or marriage of my wife, my will is that all my property, real as well as personal, shall be sold, and equally divided among my children." It will be noted that there, as well as here, and in the Heilman case, *supra,* there was no express gift to the secondary objects of his bounty. The widow and eight children survived testator. Before the widow's death some of the eight children died, leaving children. It was held that the shares of the eight children vested at testator's death. This case was cited with approval on the question of vesting in *Thieband* v. *Sebastian* (1858), 10 Ind. 454; *Wilson* v. *Rudd* (1862), 19 Ind. 101; *Simonds* v. *Harris* (1884), 92 Ind. 505, and later cases.

In *Fowler* v. *Duhme, supra,* this court determined the proper construction of the will of Moses Fowler by which he devised a vast landed estate. By item three of the will he devised the residue of his estate to his children, "subject to the following conditions, to wit: (a) In the event of the death of any of my said children without lawful issue *living at the time of the death of such child,* then the share of such deceased child shall vest in, and become the absolute property in fee simple, in equal portions, of such of my said children as shall then be living, and the living descendants of such, if any, as may then be dead,

the descendants of any deceased child taking, between them, the share which, if living, would have vested in their father or mother." One of said children died before testator's death and by a codicil he devised the deceased child's share to a grandson, subject to the above conditions. The testator's widow, the two children and the grandson survived him. One of the children, James M. Fowler, had minor children living at testator's decease. The daughter, Mrs. Duhme, brought suit against her brother and his children, and other persons who were heirs of testator, to quiet title. She claimed to be the owner in fee simple absolute of the interest devised to her—that said clause "a" referred only to a death occurring in the lifetime of testator. The defendants contended that the clause referred to death after that of testator and that the estate devised by item three was a determinable fee and, in case of Mrs. Duhme's death without issue living, the same would determine and in which event the fee simple was limited over by way of executory devise to the persons designated. In an elaborate opinion, reviewing the authorities of this and other jurisdictions, it was held that the children took a fee simple which vested absolutely on testator's death. Appellants there, as do appellees here, relied in part on *Jones* v. *Miller, supra;* and *Smith* v. *Hunter, supra.* In the course of the opinion, these cases, with others, were discussed, and it was said of each, that in the opinions "the court did not consider the rule which directs an indefinitely expressed death to the period of the testator's life." After discussing some other cases there cited, it was said of these two and the others on page 275, "If we are in error as to the question properly arising in these cases there is no room to reconcile them with numerous recent cases we have already cited and commented upon from this

State." It was further said, in considering the contention that a determinable fee was created, "since a devise of an estate, defeasible on the happening of a contingency, may be so easily expressed, and since such estates stand in disfavor before the law, the intention to create such an estate must be denied unless such intention has been made certain by the language of the whole will." If the opinion in *Fowler* v. *Duhme, supra*, is to stand, *Jones* v. *Miller, supra*, and *Smith* v. *Hunter, supra*, can not be regarded as binding precedents on the question here presented. That opinion has been followed repeatedly by this court, and as late as *Clark* v. *Thieme* (1914), 181 Ind. 163, 103 N. E. 1068, at least, and we are not disposed to question it here.

We now consider the case of *Corey* v. *Springer*, *supra*, on which appellees specially rely and which, we are informed by appellants' brief, constrained the trial court to sustain appellees' demurrers. Aside from other questions presented by appellants, not yet noted, it must be conceded that the opinion in that case, if followed, regardless of other cases, might well justify the circuit court in its ruling. It discloses that Gabriel Springer died testate in 1871, leaving as his only heirs his widow, Hannah, and his children, John J. Springer, Sarah Bromlett and Nancy J. Miller. Mrs. Miller afterwards died leaving two sons, and Mrs. Bromlett died subsequently leaving three children. Thereafter, in 1891, John J. died testate and without issue. The widow Hannah, at the time in question (1894), survived, unmarried. Corey, executor of John J. Springer's will, filed a petition to sell decedent's alleged interest in land devised to him by his father's will. The Miller and Bromlett children were made parties defendant, and, by guardian *ad litem* answered, setting up the will of Gabriel Springer, and averring

that because thereof the petitioner was entitled to no relief. The court overruled the executor's demurrer to the answer and such ruling presented the question for review there. As the answer was in bar, the decision there was aside from any question that might have been presented in relation to the contingency of the widow's subsequent remarriage. See, however, 2 Jarman, Wills (5th Am. ed.) 414. Item three of the will devised to the widow, Hannah, an estate for life, or during widowhood. Item four was as follows: "*At the death of my wife, if she shall not marry again, I bequeath all my property, share and share alike, to my children. If any of my children shall be dead at the time of such distribution or disposition, leaving children, such children are to take the share of their deceased father or mother, as the case may be.* In case my wife should again marry, and so take the provision herein made for her, in that event, under the law of Indiana, I bequeath the remainder of my estate, real and personal, to my children, and to the representatives of such as may be dead, if any, as provided in the former part of this will." It was held that John J. left no interest in the land subject to sale by the executor. It was further held on page 511 that John J. took a conditional fee, on testator's death, which could ripen into an absolute one only at the widow's death, and that it was determined by his death in the widow's lifetime, and consequently no interest remained subject to sale for his debts. Counsel for appellant here vigorously assail both the conclusion reached there, and the reasoning in support thereof. They point to the fact that Gabriel Springer's will, viewed in any light, fixed only one condition that would determine the estate devised to John J., viz., his death, in Hannah's lifetime, "leaving children"; that as he died unmarried and without issue, the sole condition fixed by

the will never affected the devise to John J. and consequently his interest was, or on his death without issue became, absolute and was subject to sale for his debts. The assumed condition in the Springer will was a subsequent one—of a class that the law does not favor, "because they tend to destroy estates." 4 Kent, Comm. 129. Even were they favored and readily implied from the language of a will, there is nothing in Gabriel Springer's will that supplies a basis for even imagination or conjecture that the testator intended to fetter the estate devised to his three children with any condition subsequent other than death "leaving children". It would appear therefore that the writer of the opinion in that case either misapprehended the record there, and confused the status of John J. with that of his deceased sisters, each of whom did die in the widow's lifetime and before the "distribution or disposition", leaving children; or that the writer overlooked the law relating to determinable fees. Was there a misapprehension of the law relating to such fees? Appellant's counsel quote from 2 Jarman, Wills (5th Am. ed.) 442, as follows: "As a devise expressly made to take effect on a contingency will not arise unless such contingency happens, it follows, *a fortiori*, that an estate once vested will not be divested unless all the events which are to precede the vesting of a substituted devise happen. And this it is to be observed applies as well in regard to events which respect the personal qualification of the substituted devisee, as those who are collateral to him. In every case the original devise remains in force, until the title of the substituted devisee is complete. Thus, if a devise be made to A, to be divested on a given event in favor of persons unborn or unascertained, it will not be affected by the

happening of the event described, unless, also, *the object of the substituted gift come in esse*, and answer the qualification which the testator has annexed thereto. Thus in *Harrison* v. *Foreman* [(1800), 5 Ves. 207], where a fund was bequeathed to A. for life, and after her decease to P. and S. in equal moiety; and in case of the death of either of them in the lifetime of A., then the whole to the survivor living at her decease. Both died in her lifetime; and Sir R. P. Arden, M. R., held that the original gift was not defeated. So in *Sturgess* v. *Pearson* [(1819), 4 Madd. 218], it was held, that a gift to a person for life, and after his death to his three children or such of them as should be living at the time of his death, conferred a vested interest on the children subject to be divested only in favor of those who should be living at the prescribed period; so that if all the children died in the lifetime of the tenant for life, the shares of the whole devolved to their respective representatives." See, also, *Boling* v. *Miller* (1893), 133 Ind. 602, 33 N. E. 754.

Determinable fees are recognized in Indiana. *Pulse* v. *Osborn* (1903), 30 Ind. App. 631, 64 N. E. 59; *Boling* v. *Miller, supra.* Kent defines such fee as an "interest which may continue forever but the estate is liable to be determined * * * by some act or event, circumscribing its continuance or extent. Though the object on which it rests for perpetuity may be transitory or perishable, yet such estates are deemed fees, because, it is said, they have a possibility of enduring forever. A limitation * * * till the marriage of B; or so long as St. Paul's Church shall stand * * * are a few of the many instances * * * in which the estate will *descend to heirs*, but continue no longer than the

period mentioned in the respective limitations, or when the qualification annexed to it is at an end. If the event marked out as the boundary to the time of the continuance of the estate becomes impossible, as by the death of *B before his marriage,* the estate then ceases to be *determinable, and changes into a simple and absolute fee.* * * * It is the uncertainty of the event, and the possibility that the fee may last forever, that renders the estate a fee, and not merely a freehold. All fees liable to be defeated by an executory devise, are determinable fees, and continue descendible inheritances until they are discharged from the determinable quality annexed to them, either by the happening of the event, *or a release.*" 4 Kent, Comm. 9. Kent's definition has been expressly approved by this court. *Mendenhall* v. *First New Church, etc.* (1912), 177 Ind. 336, 342, 98 N. E. 57. Under it, if the fee which John J. Springer took at his father's death was a determinable one, it changed into an absolute one when the possibility of "leaving children" was extinguished. For further definitions of such estate see Words and Phrases 2036; 2 Words and Phrases (2d series) 23. We are constrained to the conclusion that the decision in *Corey* v. *Springer, supra,* was erroneous, and that it should be and is overruled. We are further of the opinion, that if there was a misapprehension of the record, in that John J. was considered as "leaving children," that the reasoning of the opinion can not be reconciled with the many cases from which we have quoted, and with many others that might be cited.

While two wills are rarely, if ever, alike in all respects, it will be observed that a remarkable similarity exists between the seventh item of the will in *Heilman* v. *Heilman, supra,* and the italicized portion of the Springer will. The principal difference is

found in the express language of present gift in the Springer will that is absent in the other. This lacking feature in the Heilman will was unsuccessfully urged there as denoting a contingent remainder, and, in some jurisdictions is accepted as a presumption of intention to postpone the period of vesting to the time of distribution. Notwithstanding, this court held in the Heilman case that the child's estate vested absolutely on testator's death. See also *Rumsey* v. *Durham,* supra; *Taylor* v. *Stephens,* supra; *Tindall* v. *Miller,* supra; *Harris* v. *Carpenter,* supra; *Myers* v. *Carney,* supra. In the *Corey* v. *Springer,* supra, opinion the court says: "Here the testator, in language clear and unmistakable as could be employed, fixes the time for 'such distribution' or final disposition to occur, viz., 'at the death of his widow'. Until this event shall happen, he (testator) holds the fee conditional and in abeyance, subject to alteration, and only to ripen and fasten absolutely in his children surviving at the death of his unmarried widow." This language can not be reconciled with the opinion in the Heilman case, frequently approved since the decision in *Corey* v. *Springer,* supra; neither can it be reconciled with the opinions in *Fowler* v. *Duhme,* supra; *Aspey* v. *Lewis,* supra, nor the many other ones we have herein noted, and we disapprove it. 4 Kent, Comm. 257; 1 Fearne, Remainders 409, 410. Under the authority of our decisions, practically uniform (excepting in *Corey* v. *Springer,* supra), and construed in the light of the rules of construction referred to in this opinion, it should have been held that John J. Springer took a remainder that vested absolutely on testator's death; that the time of "distribution or disposition" was intended as the commencement of the period of enjoyment in possession by testator's children, and not as the time for

vesting of their title; that the devise to the grand-children related to the death of a child before testator's death, and was intended by the testator as substitutional, or to avoid a lapse of the devise. See *Heilman* v. *Heilman, supra; Taylor* v. *Stephens, supra; Borgner* v. *Brown* (1893), 133 Ind. 391, 33 N. E. 92; *Ballard* v. *Camplin* (1903), 161 Ind. 16, 24, 67 N. E. 505.

The devise here to John Castor's brother Conrad would have lapsed, at common law, in case of the latter's death before testator's. Section 3127 Burns 1914, §2571 R. S. 1881, has changed the common-law rule in case of devises to descendants, but not as to collaterals. *Maxwell* v. *Featherston* (1882), 83 Ind. 339; *West* v. *West* (1883), 89 Ind. 529. We are of the opinion that on testator's death Conrad Castor became invested with an absolute fee simple title subject only to the life estate, and that this title passed by his deed; that the termination of the life estate was contemplated by testator as the period of the commencement of enjoyment of the gift by the brothers and sister, and not the time for the vesting of their title; that the death of either brother or sister referred to was meant a death in testator's lifetime; that the devise to the descendants in item three was intended to substitute them as devisees for a brother or sister only who might die in testator's lifetime, and thus prevent a lapse. In *Knight* v. *Pottgieser* (1898), 176 Ill. 368, 52 N. E. 934, the same conclusion was reached on the presentation of substantially the same question in the construction of a similar will. The court erred here in sustaining the demurrer to the third paragraph of complaint. Appellants further contend, in relation to the paragraph, that the word "descendants" in the third item must be held one of limitation, and the equiva-

lent of "heirs of the body"; that under the Rule in Shelley's Case, Conrad Castor took an estate tail that our statute converts into a fee simple. In view of the conclusion reached it is unnecessary to consider such contention.

The fourth paragraph of complaint proceeds on a theory inconsistent with the conclusion we have reached and consequently there was no error in sustaining a demurrer to it. Judgment reversed with instructions to overrule appellees' demurrer to the third paragraph of complaint.

NOTE.—Reported in 111 N. E. 914. As to the tendency of law to favor the vesting of estates, see, 10 Am. St. 472. As to the time to which words of survivorship refer in a devise or bequest of remainder after life estate, see 14 Ann. Cas. 706. See, also, under (1) 40 Cyc 1664-1678; (2) 40 Cyc 1386; (3, 4) 40 Cyc 1388; (5) 40 Cyc 1650; (6) 40 Cyc 1651; (7) 40 Cyc 1667, 1668; (8) 40 Cyc 1645, 1666; (9) 40 Cyc 1821, 1823; (10) 40 Cyc 1689; (11) 16 Cyc 602; (12) 40 Cyc 1937.