### SHANNON ET AL. v. BONHAM ET AL.

[No. 3,844.  Filed June 5, 1901.  Rehearing denied October 9, 1901.]

WILLS.—*Construction.*—*Life Estate.*—*Remainder.*—A will devising certain described real estate to testator's brother, and certain other real estate to his niece, providing: "They I emphatically will to hold their respective shares of my bequest independently of all others, he independently of his wife, and she of her future husband when she shall marry, and transmit that share, respectively, to their children, if they shall have such, free from all encumbrances and debts," vests in the niece a life estate, with remainder in fee to her children.

From Clay Circuit Court; *S. M. McGregor,* Judge.

Suit to quiet title to real estate by Edward S. Bonham and others against Thomas J. Shannon and others. From a judgment for plaintiffs, defendants appeal. *Reversed.*

*J. A. McNutt* and *I. A. Torner,* for appellants.
*E. S. Holliday* and *F. A. Horner,* for appellees.

ROBY, J.—Appellees brought this action to quiet their title to certain real estate in Clay county. The appellants answered by a general denial and filed a cross-complaint averring that they were the owners in fee of the same lands, subject to an estate for the life of one Ann McNicholas Shannon, and asking to have their title quieted. A general denial was also filed to the cross-complaint. The cause was submitted to the court, special findings made, conclusions of law stated, and judgment rendered for appellees. The assignment of error is that the court erred in its conclusions of law.

The finding of facts is in substance as follows: That on the 12th day of June, 1862, one Patrick Hyland was the owner in fee simple of the real estate in controversy, to wit: The southwest quarter of the northwest quarter of section thirty-one, township nine north, range six west, in

Clay county, Indiana, and other lands; that on said day he executed his last will in words and figures following: "In the name of God, amen. I, Patrick Hyland, sick in body, but sound in mind, by this my will, the last, revoke, annul, render of no force whatever any will hitherto made by me, or for me, but specially my will witnessed by James Daly and Martin McCarthy, both of Clay county, State of Indiana, and I bestow my worldly things thus, to wit: To Michael Hyland, my brother, I give the east half of the northwest quarter of section thirty-four in township ten north of range seven west, Clay county, Indiana; also to same I give the southwest quarter of northwest quarter of section twenty-nine and northeast quarter of the southwest quarter same section in township ten north of range seven west, in Clay county, Indiana, and to same I give the southeast quarter of northeast quarter of section twenty-two in township eleven north of range seven west, in Clay county, Indiana, in all 200 acres. To Ann McNicholas, my niece, I give the southeast quarter of southeast quarter and northwest quarter of southeast quarter and southwest quarter of northwest quarter of section thirty-one in township nine north of range six west, Clay county, Indiana, in all 114 acres. They I emphatically will to hold their respective shares of my bequest independently of all others, he independently of his wife, and she of her future husband, when she shall marry, and transmit that share, respectively, to their children, if they shall have such, free from all encumbrances and debts. In confirmation and testimony whereof I hereunto affix my signature and subscribe my name. PATRICK HYLAND."

That Patrick Hyland died in March, 1864, and that the will was probated; that he died seized of said real estate; that Ann McNicholas took possession of the same immediately after his death, and continued to hold the same until she disposed of it as hereinafter set out; that said devisee, Ann McNicholas, was married to John J. Shannon, Feb-

ruary 1, 1864, and that the defendants and·cross-complainants were born as the fruits of such marriage; that the said McNicholas (now Ann Shannon) is still living; that on November 1, 1872, she conveyed said real estate by warranty deed, her husband joining therein, to David B. Hill, who thereafter conveyed the same to the plaintiffs ·(appellees) who are now in possession thereof.

The conclusion of law stated was that the plaintiffs (appellees) were the owners of said real estate and entitled to have their title quieted. The question for decision is whether Ann McNicholas (Shannon) took under the will a fee simple, or a less estate. The appellants maintain that the will created a life estate in Ann McNicholas with remainder over to her children contingent upon her having children born in wedlock; that such remainder vested in the first child born subject to open upon the birth of a second child to let it in, and so on. It is argued that such construction accords with the provision that the estate was to be held independent of the future husband, and gives effect to every part of the instrument, vesting the fee in the children free from encumbrance.

The appellee maintains that the testator intended to devise the land in fee simple; that Ann McNicholas could not hold "independently of all others", if she had only a life estate; that she could not "transmit" land to her children unless she first owned it herself; that he ignorantly thought he could put the title to the devised premises in such shape that the devisee could dispose of it in any manner she deemed proper without consulting her husband; that it was the niece he was seeking to safeguard, and not her children. In support of this theory appellees invoke the rules that the law favors the vesting of estates. That a will is not to be construed so as to create a partial intestacy unless the language compels such a construction, and that where the intention is doubtful the will should be so construed as to cast the estate where the law would cast it in the absence

of a will. It is claimed and conceded that at the time of the execution of this instrument the law was that a general devise without words of limitation or any thing in the will from which a fee by implication might be be inferred passed only a life estate. *Smith* v. *Meiser,* 51 Ind. 419; *Mulvane* v. *Rude,* 146 Ind. 476; *Korf* v. *Gerichs,* 145 Ind. 134.

The appellee supplements this proposition by the further one that whenever an intention to dispose of the fee can by any fair inference be drawn from the will, that the technical rule must be excluded, and that very slight circumstances will be laid hold of as indicating such intention, and asserts that the terms of the will bring it within the exception. The attorneys upon both sides have argued the case with clearness and ability. The principles of construction have been correctly stated, leaving for this court the most difficult task of determining what the testator actually meant as shown by the language used. Many years ago an eminent lawyer declared that "a case upon a will has no brother." The statement holds good. What the testator's intention was can not be absolutely known. The difficulty does not come from any lack of purpose on his part, but from the inaptness of expressions used by the writer of the will, presumably, it is said, the testator himself, certainly one not skilled in the work or accustomed to legal terms.

He intended that the real estate devised to Ann McNicholas should at her death become the property of her children free from all encumbrances and debts. If she took a life estate, remainder to the children, that result is assured, giving effect to the whole will. If the devise is construed as a fee simple, the latter part of the clause has no effect. The construction which gives effect to the whole instrument must be adopted. *Butler* v. *Moore,* 94 Ind. 359; *Brumfield* v. *Drook,* 101 Ind. 190; *Kilgore* v. *Kilgore,* 127 Ind. 276; *Eubank* v. *Smiley,* 130 Ind. 393; Shouler on Wills §559.

She having no children at the testator's death, the re-

Shannon v. Bonham.

mainder would of course be contingent. "Contingent remainders may be divided into two classes, the distinguishing element being the character of the event, upon the happening of which is made to depend the vesting of the remainder. The first class, according to this classification, would include all those remainders which are contingent, because the persons who are to take are not ascertained, or are not in being. Such would be remainders to the heirs of a living person or to an unborn child. In the first case the remainder is contingent, because *nemo est haeres viventis;* the heirs can not be ascertained until the death of the ancestor, and the remainder will become vested only upon the death of that person. In the second case, the remainder is contingent until the child is born. If the remainder is to a class, as to children, it will vest in the first child born, subject to be opened upon the birth of a second to let it in, and so on. If the particular estate terminated after the birth of the first, the remainder would vest completely in that child, free from the claims of any child born thereafter. * * * This division into classes has been criticised by different authorities, and has been declared to involve a useless complication of details; and it may be that the only natural and necessary division is that given by Blackstone, into two, viz.: Where the person who is to take is dubious, and where the event is uncertain. But the presentation of the minuter subdivisions at least exhibits the various possible forms of contingent remainders and the different contingencies upon which they may be made to depend, and for that reason the above classification is useful, if not necessary." Tiedeman on Real Property, 412; 4 Kent's Com. 207.

The fee vested in the heirs of the testator subject to the contingency of the devisee having children. *Waters* v. *Bishop,* 122 Ind. 516. The word children is a word of purchase and not of limitation. *Ridgeway* v. *Lanphear,* 99 Ind. 251; *Shimer* v. *Mann,* 99 Ind. 190, 50 Am. Rep. 82.

The provision that the share shall be transmitted to their

children free from all encumbrances and debts "tends strongly to show the testator's intention to limit him (them) to an estate for life." *Ridgeway* v. *Lanphear, supra; Kilgore* v. *Kilgore, supra*. The word transmit can not be given its literal meaning, in view of the lack of literary skill and power of accurate expression shown by the entire instrument, when such meaning conflicts with the intention as otherwise gathered.

The exception to the rule that a life estate only was devised is not created by the will, its provisions pointing toward a life estate. If Ann McNicholas took a fee, she could not hold it independent of the husband, since upon her death he would by virtue of the statute take an interest in it. Neither can it be assumed that the testator was ignorant of the law. It is quite possible that he was, but it is very probable that he was not. The presumption is that he knew the law, and a construction according with that presumption must be preferred. The clause "they I emphatically will to hold * * * independently of all others" can not fairly be taken alone, but must be considered in connection with the qualifying and following words, "he independently of his wife, and she of her future husband when she shall marry, and transmit that share, respectively, to their children, if they shall have such, free from all encumbrances and debts".

There is no discretion vested in the first takers as to the future disposition of the real estate as in *Rogers* v. *Winklespleck,* 143 Ind. 373; the testator made his own disposition and made it "emphatically". It is believed that he intended Ann McNicholas should take a life estate, and the appellants, her children, the remainder in fee. The conclusion of law upon the facts found should have been to the effect that appellants were the owners in fee of said real estate, subject to an estate for the life of Ann McNicholas, and entitled to have their title quieted thereto.

Judgment reversed, with instructions to restate conclusions of law, and render judgment for appellees in accordance with this opinion.