## CONOVER v. CADE ET AL.

[No. 22,805. Filed March 28, 1916.]

1. WILLS.—Estates Created.—Life Estates.—A will providing that "I want it distinctly understood that I want my property to go to my children and then when they are done with it—to go to their children, if any they may have—and if there is any that have no children then their share goes to my other children or their children provided they should be dead", devises a life estate in the children in the absence of other controlling provisions in the will. pp. 613, 614.

2. WILLS.—Construction.—Intention of Testator.—In the construction of a will all its provisions must be considered, and the intention of the testator, if manifested and lawful, must be given effect. p. 614.

3. WILLS.—Construction.—Estates Created.—Fee.—The gift in the provision of a will manifesting testator's intention to create a life estate in each of his children is not enlarged by language in another paragraph stating that to a named child "I give" certain described

lands, though the latter paragraph if standing alone would have passed the fee by virtue of §3123 Burns 1914, §2867 R. S. 1881, and by virtue of the presumption against intestacy. p. 615.

4. ESTATES.—*Estates Tail.*—An estate tail is one of inheritance descendible to some particular heirs of the devisee or grantee, and not to his heirs generally, unchangeable in character by its descent through any number of generations, and defendant on the continuance of issue of the body of the donee, passing only to lineal' descendants; hence, where the limitation over is not postponed until an indefinite failure of issue, or òn failure of issue within a definite time, no estate tail is created. p. 616.

5. WILLS.—*Construction.*—*Technical Words.*—Where a clear intention to create a life estate is manifested, neither such intention nor the validity of the will is destroyed by the testator's erroneous use of the word "entailed"; it being a matter of common knowledge that persons unlearned in the law sometimes consider a mere vested remainder as constituting a species of entailment. p. 616.

6. WILLS.—*Construction.*—*Estates Created.*—Under the rule in Wild's·Case, a devise to children "and then when they are done with it—to go to their children," is not invalid as an attempted entailment but creates a life estate with remainder over. p. 617.

7. WILLS. — *Construction.* — *Particular Words.* — *"Children"*. — *"Heirs"*.—The word "children" is deemed one of purchase rather than limitation, but in view of the liberal rules for construing wills, the word "heirs" may be construed to mean children where such was the manifest intent of the testator. p. 618.

8. WILLS.—*Construction.*—*Estates Tail.*—In view of the whole will manifesting an intention to create a life estate in testator's children with remainder to their children, the testator's statement "and I do not want it to get away from my heirs to outside parties" can not be construed as denoting an intention to create an estate tail. p. 618.

9. WILLS.—*Construction.*—*Estates Created.*—*Fee.*—Where a testator devised certain farm land and town lots to his daughter in language showing an intention to create a life estate and subsequently executed a deed conveying the lots to her in fee simple, the execution of such deed did not denote an intention that she should hold the farm land by the same title, expecially in view of a paragraph thereafter added to the will showing that testator wanted the remainder in his farm land to go to his grandchildren. p. 620.

10. WILLS.—*Construction.*—*Estates Created.*—Where testator's intention to devise a life estate was manifest from the whole will, the provision. that should certain of his land be sold the devisee thereof should have a certain sum of money, did not warrant the construction that testator intended to devise an absolute fee in such land, since a life estate may be created in money, and especially where it did not appear that the sum named represented the full value of the land. p. 620.

11. WILLS.—*Construction.*—*Estates Created.*—Where testator devised life estates to each of his children, a provision that "he gives" to one of his children, whose land was surrounded by other lands devised, a described way to the public road, as well as a provision for a road to the family burying ground, was of no effect as indicating an intention to devise a fee to the one whose land was thus surrounded, since in such case a way would be necessarily implied if the will were silent on that subject. p. 622.

12. WILLS.—*Construction.*—In construing wills courts should, as far as possible, view the situation from the standpoint of the testator. p. 622.

13. WILLS.—*Construction.*—In construing the will of an unlettered man, written by himself, a special duty devolves on the courts to carefully examine all the provisions of the will and guard against assigning to words a technical meaning not contemplated by the testator. p. 622.

From Fountain Circuit Court; *I. E. Schoonover*, Judge.

Action by Martha J. Conover against Clifford A. Cade and others. From a judgment for defendants, the plaintiff appeals. (Transferred from the Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.) *Affirmed.*

*Addison C. Harris* and *Crane & McCabe*, for appellant.

*Lucas Nebeker*, for appellees.

MORRIS, C. J.—Action by appellant, Martha J. Conover, to quiet title, involving the construction of the will of Samuel Cade. The testator owned 3,095 acres of land in Fountain County, of the value of $250,000, and, on or before May 18, 1904, commenced the preparation of his will, which was finished and signed May 25, 1906. The instrument is in his own handwriting. He died in 1908. When the will was written, and at his death, he had a wife, Eliza J., and six children, Martha J. Conover, Clifford A. and David S. Cade, Frances O. Glasscock, Mary F. Nixon and Bessie L. Hurst, all of whom were married and had children except Mrs.

Conover and Clifford Cade. The latter was married in 1903, when twenty-six years of age, but never had any child. Mrs. Conover was married in 1896, at the age of thirty-four years, and has had no child. The husbands and wives of the children survived the testator. Frances O. Glasscock died before the bringing of this action. Testator had no descendants except said children and grandchildren. He left a personal estate of the value of $45,000. So much of the will as is material here reads as follows:

" * * * I, Samuel Cade, * * * while I have the ability to divide my land and personal property between my Wife and Children—I know that I know more about my real estate than any Judge or Commissioner that might be appointed to divide my land—and I want it distinctly understood that I want my property to go to my Children and then when they are done with it—to go to their Children if any they may have—and if there is any that have no children then their Share goes to my other Children or their Children provided they should be dead—equaly or Share and Share a like—and it is understood that my wife holds one third intrust in all this land— I have only disposed of my two thirds intrust—I want it understood by all partys interested in my will that none of it this property gets to out Side people that have no connections to my Self or Blood relation to my Children. No. 2. It is my will and wish that my Beloved Wife E. J. Cade have for her Share one third of my land to be her own in fee Simple and to dispos of as She Sees propper—but my wish s that She holds for her benefit—and when She is done with it to go to the Childer that has the other two thirds of the land that I give them. I dont make it as compulsory on her to do as I wish—I can trust her to do as She Pleases about it—and when I get land divided I will at

the bottom of this will devise the personable property as I wish—No. 3. to Mary F. Nixon I give (description of real estate) containing eighty (80) acres—This the land bought of W. L. D. Cochran—the other land bought of David & Jane Pattons Children (240) acres also the lots & house in Veedersburg where Mr. & Mrs. Nixon now lives Numbered as Block 42-43-44-45-58-59-60-61—Mary F. Nixon has had an advancement of one thousand dollars (1000) September 9th 1879 also Nov. 2 1883 fifteen hundred dollars—(1500)—and—about October 1883—loaned Mary F. Nixon one thousand dollars & took hur note for it—and it was not paid & I delivered it to Marshall Nixon in about three Years and in 1891, July 10 went Mary F. Nixon Security for $1000.00 dollars to Farmers & Merchants Bank of Covington, & had it to pay—& it took $1150.00 to pay it. I expect to deed the residence and lots described in this bequest Soon this May 18— 1904 and will say what this property has cost me —in 1883—it cost me about $3600.00 dollars —and in taxes per haps $1500.00—part of Cemetery is located on this land at about the middle of S. W. fourth Sec. (23) and at South Side of said land a little east of the Center and it is Reserve '. for that purpos—have deeded the Nixon property to Mary F. Nixon in the fall of 1904—this is all the real estate that I expect to give her—No. 4. to Francis O Glasscock I give (description) this is the Alexander Bigham farm 160 acres except right of way of the Clover Leaf R. R. also (description) this is the Lucy L. Pike land 160 acres boath making the South half of said Section. Francis O Glasscock has had an advancement September the 9 1879 —of five hundred (500) dollars also May 22— 1880—five hundred (500) dollars—also—balance on note do not know the date of Henry Glasscock's amount (500) five hundred dollars —and it is my will that Frances O Glasscock is to have the land that I own at Yeddo Provided

I do not Sel it and if I do Sel it the money I get for it or at least thirty five hundred dollars—She is to have in place of said land. No. 5. to Martha J. Conover I give (description of tracts of land containing 453 acres). No. 6 to David Samuel Cade I give (description of tracts containing 650 acres) and it is my will that my Son D. S. Cade keeps a way to get to the Grave Yard from the South east corner of the Bottom field a long next to the hill whare there is a private road now leading to the Cemetery—or from his hous at the road as the private road goes now—and it is my will that he gives Mary F. Nixon 25 feet in width from the corner of the South west fourth Sec. (23) twenty three South east corner of said land—this Strip to cum off North end of West half of north east fourth Sec. 26 to connect with the Public Road South & west of Pattons Brick house. No. 7. to Bessie L. Hurst I give (description of various tracts of land.) No. 8. to my Son Clifford A. Cade I give (description of 672 acres). No. 9. and it further understood that my property divided in this will will be left as I have divided it all of the Children have had money or the use of land to farm and have got all they raised on Said land except Bessie and She has not had but little money more than the other Children and has had no use of land like D. S. Cade Mattie Conover & Clifford Cade—Clifford has not but two years—So far—D. S. has had the use of land and money to build house & barn besides and Mattie Conover has had money to build house & barn—D. S. has had (11) years and Mattie about (9) years use of land all free of rent or taxes—the Children has all been eaquell in Christmas—from 1899—6 years they have had—$1200.00 each year for six years making $7200.00 except Clifford's wife and that takes off $300.00 and before 1898 —perhaps about $1500.00 all told—Clifford and Bessie has had practikly the Same—

as Bessie has had a little money and Clifford has had the use land for five years—if I should die—I will expect my wife to do right about the personal property—and it is distinctly understood that my money and valuables be entailed Same as the realty. No. 10. and it is my will and wish that my wife be appointed executor of this will—and without bond—and that my Son Clifford A Cade to help and advise his Mother in the Setling up & dividing the prop-, erty. and it is my will and wish that thare be five hundred dollars taking out of my money and giving to my Son David Samuel Cade to be kept by him—and for him to pay four per cent on the same—or twenty dollars per year for the use of the money—and the twenty dollars to be expended on the Cemetery Situated on his land and Mary F. Nixons or the Cemetery known as the Cade & Patton Cemetery for to keep it cleaned off & kept fensed as a permanent endowment for to keep the Cemetery in good condition —this all at present if not I may add a codicil. No. 11. I want it distinctly understood that my real estate or land does not get away from my children and to be entailed So that when my Children are done with it that it goes to their Children & if any of my Children die without Children then this property that I mostly made & Saved Shall go to my other Children or to their Children Personal & real as I have expected to entail my property—and I do not want it to get away from my heirs to outside partys that never cared for me or expected anything from me or mine—now as I have had some experience in that line in right in this neighborhood Uncle Samuel Campbell Property all got away—real and Personal and went to the Malory people moastly Mr. Rin Henry M. Bacon's Family and to William H. Malorys Family that never made a dollar of his property —and an other Mans Property part of it got away he was a man that I was intimately acquainted with as I lived thirty two years of

my first years but a little over half mile from his home and herd him talk a bout his Property how he was going to divide and helped to make a will for him and went to.    No. 11 continued.    Covington on Sunday morning to get a lawyer to write a will for him and Blank deeds to fill out and he wanted Atty Charles Tyler to do the work for him but he would not come and I got Wm. H. Malory instead and he done the writing & I witnessed it and this was in May 1858.    Now I will say something about the advancements made Mary F. Nixon has had and is in the page that that I give her the land & the Veedersburg home Property if $4650.00 in cash and the house & lots cost me in 1883 $3600.00 and in taxes I paid on the property about $1500.00 and loaned Mary F. Nixon to pay for paving Second St.—$1000.00 and got Back $500.00 and then loaned him $300.00 and he never paid it—making it $800.00 all $9400.00.    Francis O. Glasscock has $1500.00 and I have give Bessie L. Hurst March 1906 $3000.00.    No. 11 Continued and I have made numeras gifts in money to my Children but as thare is not much difference will not make any Statement.    I expect to build Bessie L. Hurst a house and barn to Cost a bout three thousand dollars on the north Side of the road on the hill beyound the end of the lain or road north of my house and east as we go to Veedersburg and this not to be counted against her it is to be counted real estate—Mattie J. Conover David Samuel Cade Bessie L Hurst and Clifford A cade have more in acres that Mary F Nixon or Frances O. Glasscock but they have nearly all the waist land Coal Creek and Branches that run into it and hills and hollows and poorer land and will not be fit to Cultivate No. 11 Continued as an explanation of the fore going will of Samuel Cade of Wabash Township—Fountain County Indiana it is my will and wish that my personal property that means notes & money moastly that my wife gets one

third and the Children get the ballance Share & Share alike—Bessie to have three thousand dollars for her house & barn if I do not build them for her before the divide begins—but the $3000.00 already given her to be part of her personal property—now if my wife thinks Mary F. Nixon & Frances O Glasscock has had too little—She is to make it up to them In witness whereof I have hereunto set my hand and seal this 25th day of May 1906. Samuel Cade (Seal)."

The will contains a correct plat of the land devised to each child, with its name written thereon by the testator.

At the trial, it was agreed that the "Yeddo" land referred to in paragraph four of the will was not sold by testator; that the lands referred to in paragraph six in relation to the way to the graveyard were owned by testator at his decease and when he executed the will; that testator's widow qualified as executrix and made final settlement an'd distribution of the personal estate; that the distribution to legatees was made pursuant to a written agreement of interested parties; that testator's widow elected to take under the law; that after the probate of the will, at a family conference, testator's widow agreed to convey to each child and his or her wife or husband, her fee simple interest (reserving a life estate for herself) in the undivided third of the land described in the devise to such child; that subsequently she did convey by deed, in fee simple, to appellant and her husband, as tenants by entireties, in consideration of love and affection, the undivided one-third of the lands described in the devise to appellant subject to a life estate therein to the grantor; that the widow made conveyances to the other five children pursuant to the terms of her agreement;

that on July 23, 1904, testator, his wife joining, conveyed by quitclaim deed to appellee, Mary F. Nixon, the Veedersburg town lots referred to in paragraph three of the will.

Appellant's action here is to quiet her alleged title in fee simple to the undivided two-thirds of the 453 acres described in paragraph five of the will on the theory that the will devises such estate. All the other living descendants of testator were made defendants. Appellees claim that appellant took primarily a life estate only, with a remainder interest in event of the death of a brother or sister without a child. The trial court held with appellees. It is contended by appellant, and conceded by appellees that the testator did not contemplate partial intestacy.

The learned counsel for appellant assert that the estate given to each child must be determined from the language used in each of paragraphs

1. three to eight inclusive, wherein the testator says "To" (name of child) "I give", followed by a description of land; that the phrase "I give" must be held sufficient to devise a fee, and that such estate is not cut down by the language found in the other paragraphs; that the intention denoted in other paragraphs was to restrain the inheritance from his children to his own blood descendants, and cannot be given effect because of our statute abolishing entails; that testator intended to entail his personal property in ignorance of the law, which never permitted such disposition. Counsel for appellees contends that the language in the first paragraph, "*I want it distinctly understood that I want my property to go to my Children and then when they are done with it—to go to their Children, if any they may have— and if thare is any that have no children then their Share goes to my other Children or their Children pro-*

*vided they should be dead''* (italics here, and throughout, ours), constitutes a devise, but for life only to appellant and the other children, with alternative remainders in fee to grandchildren or brothers and sisters, and cites in support of the latter proposition, *Granger* v. *Granger* (1897), 147 Ind. 95, 44 N. E. 189, 46 N. E. 80, 36 L. R. A. 186; *Thompson* v. *Jamison* (1903), 31 Ind. App. 376, 68 N. E. 176; 16 Cyc 649, 650; 40 Cyc 1643; that the language in clauses three to eight inclusive, is not in conflict with such theory; that it does not define the estates given, and is consistent with the theory of devises of life estates, already given, and must be held as devising nothing more; that regardless of some loose language used in reference to "entailing" his estate, no intent is revealed in the will to create estates tail. That in the construction of a will all its provisions must be considered, and the intent of testator, if manifested, must be given effect, if lawful, is settled beyond controversy, and is not questioned by appellant. *Alsman* v. *Walters* (1916), *ante* 565, 106 N. E. 879, 111 N. E. 921.

We are of the opinion that the language we have italicized manifests the testator's intention to devise primarily a life estate only, to each of his children, and that, under the decisions of this court, it should be held to devise such estate, unless controlled by other provisions of the will. The gift, though not expressed, is necessarily implied. *Aldred* v. *Sylvester* (1916), *ante* 542, 111 N. E. 914; *Taylor* v. *Stephens* (1905), 165 Ind. 200, 74 N. E. 980; *Shannon* v. *Bonham* (1901), 27 Ind. App. 369, 60 N. E. 951; *Ewbank* v. *Smiley* (1892), 130 Ind. 393, 29 N. E. 919; *Haskett* v. *Alexander* (1893), 134 Ind. 543, 34 N. E. 325; *Heilman* v. *Heilman* (1891), 129 Ind. 59, 28 N. E. 310; *Moores* v. *Hare* (1896), 144 Ind. 573, 43 N. E. 870; *Aspey* v.

*Lewis* (1899), 152 Ind. 493, 52 N. E. 756; *Campbell* v. *Bradford* (1909), 166 Ind. 451, 77 N. E. 849.

We are further of the opinion that such gift is not enlarged by the language found in paragraph five, as follows: "To Martha J. Conover, I give".

3. At common law the paragraph, standing alone, would have devised no more than a life estate. *Mulvane* v. *Rude* (1896), 146 Ind. 476, 45 N. E. 659. If it stood alone here, by virtue of our statute (§3123 Burns 1914, §2567 R. S. 1881) and because of the presumption against intestacy, it would devise a fee. But it does not stand alone and, in our opinion, the fee is devised to others by paragraph one, which manifests not only the intention to make a devise of the entire two-thirds to others than the wife, but also a purpose to partition the estate and allot the shares in severalty. *Rusk* v. *Zuck* (1897), 147 Ind. 388, 45 N. E. 691, 46 N. E. 674. The testator was of the opinion (likely correct) that he was better qualified to make a just division of the land than would be commissioners appointed by a court, or the court itself, if called on to review the commissioner's work on evidence of witnesses. §§1255, 1256 Burns 1914, §1198 R. S. 1881, Acts 1889 p. 395. The will shows that the land was of variant quality, that his children had been advanced in different amounts and had enjoyed the fruits of his estate in varying degrees, and that it was testator's intention to make an equitable division among them taking into consideration all these factors. Considering the will as a whole it is evident that in the first paragraph he determined the character of the estate to be devised, and that in the paragraphs three to eight inclusive he was concerned chiefly, if not entirely, about the proper partition of the large estate.

Aside from these six paragraphs, it is claimed by

appellant, that the will exhibits the intention of testator to devise to his children what at common-law were recognized as estates tail, and which, by our statute, have been converted into fee simple ones.

An estate tail is generally defined as one of inheritance (deriving its existence from the statute *de donis conditionalibus*, 13 Edw. 1, c. 1, 1, 1285), which is descendible to some particular heirs of the devisee or grantee, and not to his heirs generally. 1 Cruise 78; *Outland* v. *Bowen* (1888), 115 Ind. 150, 17 N. E. 281, 7 Am. St. 420; 2 Blackstone, Comm. 110. Its character is not changed by its descent through any number of generations. It is particularly distinguished as being measured by the continuance of issue of the body of the donee, and its existence determined only on the failure of such issue, and its descent to lineal and not to collateral heirs. 3 Jarman, Wills (5th ed.) 90. On the other hand, where the limitation over is not postponed until an indefinite failure of issue, but on failure of children merely, or on failure of issue within a definite time, no estate tail is created. 10 R. C. L. 658; *Outland* v. *Bowen, supra; Huxford* v. *Milligan* (1875), 50 Ind. 542; *Doe* v. *Jackman* (1854), 5 Ind. 283. It is true that testator says (paragraph 11) that he has "entailed" his estates, "So that when my children are done with it that it goes to their Children, & if any of my Children die without Children then this property * * * Shall go to my other Children or to their Children." Evidently the testator did not know the meaning of the word "entail," but he had the right to assign his own meaning to the words he used. *Ridgeway* v. *Lamphear* (1885), 99 Ind. 251, 253. In the clause just quoted, he furnished his own definition, erroneous though it be. But a devise of a

life estate to his children, and after their death to their children, which is clearly denoted by the language quoted, loses none of its effect by a patent mistake in naming it. The Century Dictionary, after defining the word "entail", uses this language: "The word is now, however, often loosely used, since strict entails are obsolete, to indicate the giving of property to one or two successively for life with suspension of power of alienation meanwhile." It is a matter of common knowledge that those unlearned in the law have hazy notions about entailed estates and sometimes consider a mere vested remainder in fee as constituting a species of entailment. Estates tail were long ago abolished here. R. S. 1843 p. 424.

However, since appellant never had any child, the rule in *Wild's Case* (1599), 3 Coke *17, is invoked to show that the devise to appellant created what 6. the common law recognized as an estate tail.

What is called the rule in that case is recognized here as one of construction. *Biggs* v. *McCarty* (1882), 86 Ind. 352, 359, 44 Am. Rep. 320; *Moore* v. *Gary* (1897), 149 Ind. 51, 53, 48 N. E. 630. In the report of Wild's Case it is said: "and the case for difficulty, was argued before all the Judges of England. * * * was resolved for good law, that if A devises his lands to B and to his children or issues, and he hath not any issue at the time of the devise, that the same is an estate-tail; for the intent of the devisor is manifest and certain that his children or issues should take, and as immediate devisees they cannot take, because they are not in *rerum natura*, and by way of remainder they cannot take, for that was not his intent, for the gift is immediate, therefore such words shall be taken as words of limitation * * * But it was resolved, that if a man * * * devises land to husband and

wife, *and after their decease to their children*, or the remainder to their children; in this case, although they have not any child at the time, yet every child which they shall have after, may take by way of remainder, according to the rule of the law." We have quoted at length from Wild's Case, *supra*, because the last resolution there adopted has been sometimes overlooked. See *Hayes* v. *Martz* (1909), 45 Ind. App. 704, 84 N. E. 546, 87 N. E. 837, transferred to this court and reversed, *Hayes* v. *Martz* (1910), 173 Ind. 279, 89 N. E. 303, 90 N. E. 309. Since the language here, "and then when they are done with it", following the devise to the children, in the first paragraph, must be held the equivalent of "after their decease" the rule in Wild's Case does not aid appellant in her contention respecting an estate tail. The word children is deemed one of purchase rather than limitation, while the reverse is true of the word "heir". *Doe* v. *Jackman*, *supra*; *McIlhinny* v. *McIlhinny* (1894), 137 Ind. 411, 34 N. E. 147, 45 Am. St. 186, 24 L. R. A. 489; 2 Words and Phrases 1138-1141; *Wills* v. *Foltz* (1907), 12 L. R. A. (N. S.) 283 note. However, in wills, which take a liberal construction in such respect, the word "heirs" may be construed to mean children where such was the manifest intent of testator. *Ridgeway* v. *Lamphear*, *supra*; *Granger* v. *Granger*, *supra*.

In the first sentence in the eleventh paragraph, after reiterating his purpose that the land shall not get away from his children and that when they are "done with it" it shall go to their children, and if they be dead to their children or brothers and sisters, testator says "and I do not want it to get away from *my heirs* to outside partys", etc. Appellant's counsel urge that the use of the italicized words denotes the intention to create an

estate tail. We can not adopt such view when taking into consideration, as we must, all the language of the will relating to the subject. The statute *de donis conditionalibus* divided the estate into two parts, giving the donee a particular estate, the fee tail, and leaving in the donor or his heirs the ultimate fee simple expectant upon an entire failure of issue, whether such extinction occur in one year, or in a thousand years after the creation of the estate. 16 Cyc 608; 4 Kent, Comm. 12; 10 R. C. L. 657. Whether considered in connection with its immediate context, or in relation to any provision in the will constituting or explaining devises, we are of the opinion that the term "my heirs" does not denote a purpose to limit the fee in remainder to testator's heirs after an indefinite failure of issue of his children. 10 R. C. L. 657. A noticeable feature of the will is the tendency to explain what he had done in the first paragraph, but nowhere does he exhibit any concern in his descendants other than children and grandchildren. It is the event only of a child dying without children that inspired his anxiety. He knew that it was possible that shortly after his death his widow might die, and be followed by the death of a child, intestate and without issue, with husband or wife surviving, and thus leaving a child's share of this great estate to a stranger to his blood (§3028 Burns 1914, §2490 R. S. 1881), while all his other five children might survive. Such situation he did not view with equanimity. He had "mostly" made and saved this property (helped, no doubt, by his wife and children) and he did not want the result of his toil and sacrifice, to fall, by descent, into the ownership of "outside partys" strangers to his blood, to the deprivation of his children and grandchildren. He had observed what became of the property of "Uncle Samuel Campbell" and that of a near

neighbor whose name is not mentioned. Evidently he considered his children and grandchildren more appropriate objects of his gifts than sons-in-law or daughters-in-law, and, that his desires be not thwarted, he kept the purpose prominent in his will, and with unnecessary repetition. But he did not look beyond his grandchildren or seek to restrain the alienation by them or descent from them, of the fee. We are of the opinion that it was not testator's purpose to create an estate tail.

It is contended by appellant that since the testator conveyed the Veedersburg lots, in fee simple, to Mrs. Nixon, it must have been his intention that she hold the farm land by the same title.

It appears that at first he did devise the lots, but on May 18, 1904, he says that he expects to make a deed for them. The deed he actually made conveyed a fee simple. No doubt he had a purpose in superseding the devise by a conveyance and he must be presumed to have known the meaning of fee simple, for he had devised such title to his wife by paragraph two. In any event the title to the Veedersburg lots did not pass by the will, and as to the land devised he says in paragraph eleven—written probably nearly two years after he made the deed, the same that he had before said in paragraph one viz., that when his children are done with it, he wants it understood that it shall go to the grandchildren.

It is also urged that the will should be construed as devising a fee simple since testator contemplated the propriety of selling the real estate at the town of Yeddo, in which case as much as $3,500 of the sale price was bequeathed to Mrs. Glasscock. It is contended that this bequest, had it become effective, would have been absolute, and denotes the testator's intention to devise an

absolute fee in the real estate. A life estate in money as well as in land may be created. But if it be conceded that it was the intention, if the Yeddo land were sold, to make the bequest of the money absolute, such circumstance in our opinion, does not overcome the evidence of the testator's intention elsewhere manifested to devise a life estate in the farm land. The testator was dealing with difficult problems in attempting to so give and divide his property as to benefit his children equally, for he had to consider the various factors before noted. To Mrs. Glasscock and Mrs. Nixon each he devised only 320 acres of land, including the widow's third. We do not know how much land there was at Yeddo, but its extent was possibly such as to forbid a division thereof were partition demanded by the widow, and its net rental value may have been small. It will be noted further that he did not unqualifiedly bequeath, on condition of sale, the entire proceeds thereof, but only $3,500. Considering the nature of the property, and the other factors involved in the problem, the testator may have deemed it necessary to give Mrs. Glasscock absolutely as much as $3,500 to render her equal beneficially with the other children, in case the land at Yeddo were sold by him in his lifetime. Moreover, while the will indicates the testator's disposition to treat his children all alike it manifests an even stronger purpose that his grandchildren shall not be deprived of the opportunity of enjoying the estate, which he had "mostly made and saved", and since, as shown by the agreed statement, Mrs. Glasscock had three children (appellees here) when the will was executed, his last purpose above noted would not likely fail, regardless of any possible miscalculation in the division. We are of the opinion that the conditional bequest to Mrs. Glasscock does not evince a pur-

pose to give her more than a life estate in the land described in paragraph four.

The lands devised to David S. Cade and Mrs. Nixon joined, but Mrs. Nixon's land abutted on no highway; also, on the land given to David was the family burying ground. In paragraph six the testator says it is his will that David keep open a way to the graveyard, and that "he gives" Mrs. Nixon a described way to the public road. It is urged that testator must have contemplated an existence of these ways beyond the life of David, and consequently a fee in him was intended. We entirely agree with appellant's counsel that the testator intended these ways to exist beyond the life of David. Here the testator was making partition of his lands as well as devising titles. In such case a way to Mrs. Nixon's land would be necessarily implied if the will were silent on the subject. *Ellis* v. *Bassett* (1891), 128 Ind. 118, 27 N. E. 344, 25 Am. St. 421; *Ritchey* v. *Welsh* (1898), 149 Ind. 214, 48 N. E. 1031, 40 L. R. A. 105. The same may be said as to the family burying ground. Here the testator located the ways, and, in regard to Mrs. Nixon's land, prescribed the width thereof. The fact that he willed that David "give" such way is of no practical significance as bearing on the question of the estate devised to David.

In construing wills courts, should, as far as possible, view the situation from the standpoint of the testator. Here, as appellant's counsel truly say, is the will of an "unlettered" man. He wrote it himself, as he had the right to do. Under such circumstances a special duty devolves on courts to examine carefully all the provisions of the will and guard against assigning to words, perhaps used misunderstandingly,

a technical meaning not contemplated by the testator. Cleveland v. Spillman (1865), 25 Ind. 95. So viewed, this will, from first to last paragraph, in our opinion, clearly manifests the purpose to devise primarily. to appellant, and the other children, only life estates. The appellant must recover if at all, on the strength of her own title. No counterclaims were filed, and we are not called on to decide the exact nature, or period of vesting, of the estate taken by the remaindermen in the land devised to appellant. No doubt the grandchildren in existence took, at testator's death, a vested remainder in fee in the land devised to their respective parents. While for the sole purpose of determining the testator's intent, were the same obscure, we should consider the nature and period of vesting of the title of remaindermen, in the land devised to appellant, no such necessity here arises, because, as we view it, the intent is clearly manifested. Judgment affirmed.

NOTE.—Reported in 112 N. E. 7. As to implied concession of right of way, see 34 Am. St. 708. See, also, under (1) 40 Cyc 1620; (2) 40 Cyc 1386, 1413; (3, 11) 40 Cyc 1613; (4) 16 Cyc 608; 40 Cyc 1600, 1601; (5) 40 Cyc 1398; (6) 40 Cyc 1598; 40 Cyc 1597, 1598; (8) 40 Cyc 1597; (10) 40 Cyc 1613, 1614; (12) 40 Cyc 1392; (13) 40 Cyc 1392, 1398.